**William L. PATTERSON, Plaintiff–Appellant,**

v.

**INT'L BROTHERHOOD OF TEAMSTERS, LOCAL 959; Creamery Corporation d/b/a Matanuska Maid, Defendants–Appellees.**

No. 95–36227.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 17, 1997.

Decided Aug. 15, 1997.

A. Lee Petersen, Anchorage, AK, for Plaintiff–Appellant.

Ronald L. Bliss, Bliss & Wilkens, Anchorage, AK, for Defendants–Appellees.

Before: WALLACE, JOHN T. NOONAN, Jr., and THOMPSON, Circuit Judges.

Opinion by Judge THOMPSON; Dissent by Judge NOONAN.

DAVID R. THOMPSON, Circuit Judge:

William L. Patterson appeals from the district court's summary judgment in favor of the International Brotherhood of Teamsters, Local 959 (Local 959). Patterson contends Local 959 breached its duty of fair representation while assisting him in his grievance and arbitration proceedings. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS

Matanuska Maid Dairy (Mat–Maid) employed Patterson for approximately seven years as a driver and delivery person. One morning during his employment with Mat–Maid, on April 30, 1986, Patterson clocked into work and then drove his delivery truck to Local 959's offices to speak with a union representative. Patterson waited for the representative in a restaurant which was in the same building as Local 959's offices. When the representative did not appear, Patterson left for his first delivery. As Patterson was leaving the parking lot, a pickup truck struck him from behind. When Patterson returned to work after his deliveries, Mat–Maid informed him that he was terminated for cause.

Mat-Maid cited three reasons for the termination: gross disobedience, being in a second accident within a year involving property damage to others, and using Mat–Maid's delivery truck for personal business—driving to Local 959's offices in an attempt to speak with a union representative on a personal matter.

At the time Mat–Maid terminated Patterson, a collective bargaining agreement was in effect between Local 959 and Mat–Maid. When Mat–Maid informed Patterson of his termination, Patterson immediately went to Local 959's offices and discussed his termination with Edwin Conyers, the business representative assigned to administer the Mat–Maid collective bargaining agreement. That afternoon, Patterson and Conyers met with John Seawell, Mat–Maid's general manager, and Joe Van Treeck, Mat–Maid's plant manager, in an attempt to settle the matter. No resolution was reached. As a result, Conyers filed a grievance with Mat–Maid on Patterson's behalf.

On May 12, 1986, Local 959 and Mat–Maid reached a tentative resolution of the grievance: Patterson would be given a letter of reprimand and a thirty-day suspension without pay. This proposed resolution, however, was not accepted by Patterson. He was adamant that he had done nothing wrong and should not be suspended without pay. Because he was unwilling to accept the settlement at that time, Mat–Maid and Local 959 agreed to extend the informal resolution period until June 2, 1986.

On June 1, 1986, without Mat–Maid's consent or a settlement in place, Patterson attempted to return to work. He was cited for trespass and escorted off Mat–Maid's property. Patterson then apparently agreed to accept the settlement. The following day, Conyers called and told him to report for work the next morning.

Patterson reported for work on June 3rd. On June 4th, Seawell asked Patterson to sign the letter of reprimand. Patterson viewed the letter as "a lengthy letter of reprimand from the company point of view" and as "distorted and untruthful." He refused to sign it and was escorted off the premises.

The next day Mat–Maid and Local 959 met in an attempt to salvage the settlement. Patterson, however, insisted on arbitration. Mat–Maid informed Local 959 that, because Patterson had rejected the proposed settlement, Mat–Maid considered Patterson terminated.

The parties then proceeded to arbitration. In July 1986, the arbitrator determined just cause supported Patterson's termination and rejected his argument that a lesser disciplinary sanction was appropriate. The arbitrator determined just cause existed because Patterson had used the Mat–Maid delivery truck for personal business. The arbitrator rejected the other two termination grounds of gross disobedience and being in a second accident. The arbitrator also determined a sanction less than termination was not appropriate based on Patterson's "almost continuous and predictable conduct that is disruptive of a struggling dairy trying desperately to survive." The arbitrator found that although Mat–Maid had given Patterson two opportu-

nities "to start with a clean slate," Patterson continued to have disciplinary problems.

In 1988, Patterson filed a pro se action in Alaska state court against Mat–Maid, Local 959, and various other defendants. As relevant to this appeal, Patterson alleged Local 959 breached its duty of fair representation while representing him during his grievance and arbitration proceedings. He also asserted a wrongful discharge claim against Mat–Maid.

The state court action was stayed as against Local 959, because it had earlier filed a Chapter 11 bankruptcy petition. The action proceeded against the other defendants, and as to Mat–Maid the state court determined the statute of limitations barred Patterson's wrongful discharge claim. *See Patterson v. State Dep't of Agric.*, 880 P.2d 1038, 1046 (Alaska 1994), *cert. denied*, 513 U.S. 1127, 115 S.Ct. 936, 130 L.Ed.2d 881 (1995).

When the bankruptcy court eventually permitted Patterson to pursue his claim against Local 959 in state court, Local 959 removed the action to federal district court. The district court denied Patterson's motion to remand the action to state court, and granted Local 959's motion for summary judgment. This appeal followed.

## DISCUSSION

Patterson contends the district court erred by refusing to remand the action to state court. He also contends the district court erred by granting summary judgment in favor of Local 959 on his claim for breach of the duty of fair representation.

### A. Removal

We review de novo the district court's refusal to remand the action. *Eyak Native Village v. Exxon Corp.*, 25 F.3d 773, 777 (9th Cir.1994).

Patterson filed his state court action and served Local 959 on May 11, 1988. That action was automatically stayed as to Local 959, pursuant to 11 U.S.C. § 362, because Local 959 earlier had filed a Chapter 11 bankruptcy petition. In April 1991, Patterson sought permission from the bankruptcy court to proceed with his claim in state court

against Local 959. In an order filed March 7, 1994, the bankruptcy court abstained pursuant to 28 U.S.C. § 1334(c)(1) and allowed Patterson to pursue his claim against Local 959 in state court. On March 31, 1994, Local 959 removed the action to federal district court, pursuant to 28 U.S.C. § 1446(b).

▪ Patterson argues Local 959 did not timely remove the action because it did not file its notice of removal within thirty days after the date it received service of process, back in May 1988. *See* 28 U.S.C. § 1446(b). Local 959's notice of removal was filed almost six years after such service. Local 959 argues, however, its notice of removal was timely because it was filed within thirty days of March 7, 1994, the date Patterson obtained *relief from the automatic stay.* We agree.

▪ If an automatic stay is in effect at the time the plaintiff files a state court action (which was the situation here), the thirty-day period for removal does not begin to run until relief is obtained from the automatic stay. *See Easley v. Pettibone Michigan Corp.,* 990 F.2d 905, 908–09 (6th Cir.1993). A contrary rule would require a debtor to expend limited resources and to continue to litigate a claim as if no stay were in place. *Cf. In re Schwartz,* 954 F.2d 569, 571–72 (9th Cir.1992). If a debtor were forced to continue to litigate the claim, the purposes underlying the automatic stay would be thwarted. *Id.* Thus, the district court did not err in denying Patterson's motion to remand.

B. Duty of Fair Representation

▪ Patterson next argues the district court erred by granting Local 959's summary judgment motion on his fair representation claim. We review de novo the district court's grant of summary judgment. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

▪ A union breaches its duty of fair representation if its conduct is "arbitrary, discriminatory, or in bad faith." *Peters v. Burlington N.R.R.,* 931 F.2d 534, 538 (9th Cir.1990) (quotations and citations omitted). A union does not breach its duty of fair representation by acting negligently. *Id.* A union acts arbitrarily only if it shows an "egregious" or "reckless disregard" for the rights of its members. *Id.* Further, "[w]e have never held that a union has acted in an arbitrary manner where the challenged conduct involved the union's judgment as to how best to handle a grievance." *Peterson v. Kennedy,* 771 F.2d 1244, 1254 (9th Cir.1985).

▪ Patterson contends Local 959 breached its duty of fair representation by not sufficiently investigating his grievance. In support of this contention, Patterson argues Local 959 should have presented evidence that other Mat–Maid drivers stopped for coffee breaks to complete paperwork in the same restaurant where Patterson was waiting to speak with the union representative, and these other drivers were not terminated nor were they even disciplined.

We reject this argument because the evidence would have been irrelevant. Patterson did not stop at the restaurant to take a coffee break and to complete paperwork. He went to Local 959's offices and was waiting at the restaurant hoping to speak with a union representative to obtain permission to attend a collective bargaining meeting.

▪ Patterson next argues Local 959 breached its duty because it failed to introduce evidence that he suffers from posttraumatic stress disorder. We also reject this argument. Local 959 made a strategic decision not to introduce the evidence. Local 959 explained it decided to focus on the particular incident which gave rise to Patterson's termination because Patterson insisted he had done nothing wrong and he contended his termination was not warranted. Local 959 determined the medical evidence would have been largely irrelevant to this defense. Local 959 also believed the introduction of the medical evidence could have been damaging because such evidence could have had an adverse effect on the arbitrator's view of Patterson's job performance.

▪ The union's explanation for not presenting the medical evidence is reasonable. If a union provides a reasoned explanation for not pursuing a potential defense, we may not second guess its decision. *Stevens v. Moore Bus. Forms, Inc.,* 18 F.3d 1443, 1448 (9th Cir.1994). "It is for the union, not the

courts, to decide whether and in what manner a particular grievance should be pursued." *Peterson,* 771 F.2d at 1254. Local 959's reasoned tactical decision not to present the medical evidence does not amount to a breach of the duty of fair representation. *See id.* at 1254–55.

■ Patterson also contends Mat–Maid and Local 959 engaged in a civil conspiracy to terminate him. In support of this argument, Patterson refers to a note kept by Seawell, Mat–Maid's general manager. The note apparently was made by Seawell during a conference with Robert Sinnett, a Local 959 official. This note reads:

> Sinnett's comments: "you've got to win. He might leave the state. That's the only way I can get rid of him."

■ We agree with the district court that this note is not sufficient to raise a genuine issue of material fact. Patterson must produce more than a "mere scintilla" of evidence to avoid summary judgment. *See City of Vernon v. Southern Cal. Edison Co.,* 955 F.2d 1361, 1369 (9th Cir.1992). Patterson has not produced any evidence of hostility on behalf of Local 959 toward him or any motive that Local 959 would have in conspiring with Mat–Maid to terminate him. Moreover, the evidence demonstrates that Local 959 aggressively sought to get Patterson reinstated during settlement negotiations and arbitration proceedings. The note simply sets forth a truism: if Mat–Maid wanted to get rid of Patterson, Mat–Maid would have to win the arbitration.

■ Patterson points to several other instances of Local 959's alleged breach of its duty of fair representation. None, however, has any merit. Local 959 was not required to assign an attorney to represent Patterson during his arbitration proceedings, *see Castelli v. Douglas Aircraft Co.,* 752 F.2d 1480, 1483 (9th Cir.1985), and it did not have an obligation to advise Patterson of his ability to further pursue a civil action—particularly in light of the weakness of Patterson's case. *Cf. Galindo v. Stoody Co.,* 793 F.2d 1502, 1513 (9th Cir.1986) (stating a union "need not process a meritless grievance").

■ Nor has Patterson demonstrated that he suffered any harm due to Local 959's alleged failure to object to the admission of a letter written by Mat–Maid accusing Patterson of gross misconduct. The arbitrator specifically stated he gave no weight to the allegations made in the letter.

■ Finally, Patterson has not demonstrated that he was harmed in any way by Local 959's failure to review the reprimand letter prior to the time Mat–Maid asked Patterson to sign it. Patterson had ample opportunity to discuss the letter with Local 959 the day after it was presented to him, as well as thereafter when Local 959 set up a meeting with Mat–Maid in an attempt to save the settlement. Patterson, however, rejected the settlement and insisted on arbitration.

## CONCLUSION

The district court did not err in determining Local 959 timely removed the action from state court. Local 959 removed the action within thirty days of the date the bankruptcy court granted Patterson relief from the automatic stay. The district court also did not err in granting summary judgment in favor of Local 959. Patterson failed to raise a genuine issue of material fact in support of his claim that Local 959 breached its duty of fair representation.

AFFIRMED.

NOONAN, Circuit Judge, dissenting:

On the Union's first motion for summary judgment the district court ruled in the Union's favor, except as follows:

> There is, however, one disturbing aspect of this case that precludes summary judgment. It appears that the Union knew that Patterson was suffering from mental or emotional problems which have been diagnosed as post traumatic stress disorder. It also appears that Patterson's mental state might explain his adversarial relations with his supervisors. Consideration of these factors might illuminate the need for a remedy or sanction short of termination. The Union considered this issue of sufficient importance to argue it to the arbitrator, and the arbitrator considered it sufficiently important to mention in his decision:
>
> > I have also considered grievant's testimony regarding his medical condition,

and have speculated that grievant's performance and behavior of the last several months, i.e., his cyclical swings in performance, to be possibly symptomatic of medical complications arising out of his diagnosed post-trauma syndrome. There was no competent testimony or other evidence to this effect, and the arbitrator was hired to arbitrate, not totally exceed his competence by practicing medicine. I can only suggest that if the grievant does determine that events of the last year were a medically phenomenon that the company give such fact a consideration.

Docket No. 25, Affidavit of Edwin R. Conyers at Exhibit S at 14.

It appears that the arbitrator would have considered medical evidence if it had been offered, and might have determined that a sanction short of dismissal was appropriate if the medical evidence explained Patterson's behavior and offered significant hope that with specific treatment the behavior would not reoccur. While determining appropriate witnesses is certainly a matter of judgment, the Court hesitates to find that failure to call a treating physician was not irrational, or a reckless disregard of Patterson's rights, without some explanation in the record of the decision not to call medical witnesses. In the absence of such an explanation, a trial would appear warranted.

The Union renewed its motion submitting the affidavit of Edwin R. Conyers, the business agent who had represented Patterson in the arbitration. Conyers swore as follows:

I believe that medical testimony would have undermined our position on a point of concern to us (the Tranxene incident) and would have conflicted with Mr. Patterson's own beliefs and testimony concerning the significance of his medical condition. In addition the material in the file explained the features of Post Traumatic Stress Disorder and were available for use if they had been consistent with our case.

Patterson replied to this motion with his own affidavit, in which he swore to the contrary:

I absolutely deny Mr. Conyers' statements in paragraph 7 of his September 26, 1995 affidavit. I do not believe that medical testimony would in any way have undermined our position in the arbitration with respect to the Tranxene incident and it certainly would not have conflicted with my own beliefs and testimony concerning the significance of my medical condition. In fact, I firmly believe, and I believed then, that medical testimony would have been totally consistent with my own beliefs and testimony concerning the significance of my medical condition.

The district court then ruled on the second motion stating:

The Union has renewed its motion for summary judgment, filing affidavits and other evidence to show that its decisions were strategic and not reckless or not bad faith.... Patterson responded, conceding that the decision was strategic, but contending that the strategy was flawed.... That may be. However, mere negligence is not enough.

The court granted the motion for summary judgment.

It is not apparent what changed the court's mind between the first and second motions for summary judgment. It does not appear that Patterson conceded that the decision not to present medical testimony was strategic. Instead, his affidavit declares: "I absolutely deny Mr. Conyers' statements in paragraph 7 of his September 26, 1995 affidavit." There could not be a sharper disagreement over an issue of material fact: was or was not the Union's decision strategic? On that issue alone Patterson was entitled to go to the jury.

In addition, there was one further piece of evidence. It consisted in a note found in the files of John L. Seawell, the general manager of Mat–Maid, regarding a conference he had held before the arbitration with Robert F. Sinnett, the Secretary–Treasurer of the Union. The note read: "Sinnett's comments. 'you've got to win. You might leave the state. That's the only way I can get rid of it.'"

Seawell testified that the note conveyed Sinnett's understanding that the only way Seawell would be rid of Patterson would be to win the arbitration. Sinnett denied having said that he needed to get rid of Patterson. He did suggest that he might have told Seawell that the only way he could discharge Patterson was by winning the arbitration.

The district court commented on this evidence that it provided "only a scintilla of evidence that the Union engaged in a conspiracy to 'get' Patterson.... There is no evidence that would support a plausible motive for the Union to intentionally conspire against Patterson. Patterson has failed to create a disputed issue of fact regarding bad faith."

It is possible that Seawell's and Sinnett's explanation of the note in the files is the correct one. But it is only one way that the note might be read. A reasonable juror could read the note as saying that Sinnett was endorsing Seawell's position. The note does not have closing quotation marks around Sinnett's "comments," but at the very least the first sentence, "you've got to win," might reasonably be interpreted as an expression of enthusiasm for the company prevailing in the arbitration. As the note describes what it is reporting as "comments," a reasonable juror could also conclude that the following two sentences also come from Sinnett and convey his hope to get rid of Patterson. At the very least reasonable minds could differ in the interpretation of the note and could discount Sinnett's and Seawell's later testimony as efforts to explain away a highly embarrassing conversation. Patterson should have been able to present this substantial evidence of a conspiracy between the Union and management to a jury.

The district court said that Patterson showed no motive for the Union conspiring against him. That view of the facts is one that a reasonable juror also could find not compelling. There is abundant evidence in this record on summary judgment of what a difficult person Patterson was. His evidence

as to what his experience in Vietnam had led to in his medical condition shows that he would have maintained a contentious stance toward any authority figure such as the Secretary–Treasurer of the Union. A reasonable juror could conclude that the Union had a strong motive to get rid of a member with Patterson's medical handicap.

Post Traumatic Stress Disorder, since 1980 recognized as a serious medical condition, was particularly aggravated in the case of Vietnam veterans by the political conditions of the war and the reception of veterans on their return. Like the arbitrator in this case we cannot practice medicine, but we can note that a fair and full presentation of Patterson's medical condition after Vietnam would have produced a very different result before an arbitrator who expressed such thoughtful regret that the subject had not been presented. It is a jury question whether the Union failed to present the evidence because it wanted to aid the employer in getting rid of a difficult member.