**James J. SLEVIRA, Plaintiff–Appellant,**

v.

**The WESTERN SUGAR COMPANY; Local No. 190 Teamsters, Defendants–Appellees.**

No. 99–35109.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 15, 1999

Filed Feb. 2, 2000

Stephen C. Mackey, Towe, Ball, Enright, Mackey & Sommerfield, Billings, Montana, for the plaintiff-appellant.

William J. O'Connor II, O'Connor & O'Connor, Billings, Montana, for defendant-appellee Teamsters Local 190; Steven J. Lehman, Crowley, Haughey, Hanson, Toole & Dietrich, Billings, Montana, for defendant-appellee Western Sugar Company.

Before: WALLACE, FARRIS, and T.G. NELSON, Circuit Judges.

PER CURIAM:

James J. Slevira, a member of the International Brotherhood of Teamsters Local 190, appeals from the district court's summary judgment in favor of Western Sugar Company (Western) and International Brotherhood of Teamsters Local No. 190 (union) in Slevira's action alleging that Western wrongfully discharged him in violation of the collective bargaining agreement under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), and that the union breached its statutory duty of fair representation. Slevira contends that the union breached its duty of fair representation when it failed to consider his meritorious defense before deciding not to arbitrate his grievance against Western for unjust discharge. The district court determined that the union exercised its judgment and offered a reasoned explanation for its decision not to pursue Slevira's grievance to arbitration. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I

We review the district court's order granting summary judgment de novo. *See Stevens v. Moore Bus. Forms, Inc.*, 18 F.3d 1443, 1446 (9th Cir.1994). We must determine: (1) whether there is a genuine issue of material fact when the evidence is viewed in the light most favorable to the nonmoving party; and (2) whether the district court correctly applied the relevant substantive law. *See id.*

Slevira was hired by Western at its sugar processing plant in 1992 and became a warehouse shift leadman in 1995. He was a member of the union. On Friday, December 12, 1997, after concluding his shift, Slevira turned off a limit switch and disconnected fuses from several fuse boxes in the sugar plant. Slevira maintained that he intended these actions would provide a trouble-shooting exercise for a leadman trainee who was scheduled to work on the succeeding shift.

During the succeeding shift, the leadman trainee and trainer encountered substantial difficulty as they corrected the limit switch and fuse problems in two fuse boxes. Then, as they replaced the fuses in a third fuse box without shutting off the power, the fuse box exploded. The sugar processing system was disabled for approximately nine hours while repairs related to the explosion were completed.

On the following Monday, Western investigated the incident, taking statements from the trainer, trainee, and several employees involved in repairing the plant machinery. That same day, with a union representative present, Western terminated Slevira, citing willful neglect of safety procedures.

Slevira then met with Joe Dwyer, a union officer, for approximately two hours and explained his intention to create a training simulation. Soon thereafter, Dwyer instructed Slevira to prepare a statement. Slevira indicated in his statement that he turned off the limit switch and pulled the fuses as a troubleshooting exercise for the leadman trainee. Dwyer filed a grievance for Slevira, alleging wrongful discharge and requesting a Step II meeting, the second stage of the collective bargaining agreement's grievance procedure involving management, the aggrieved, and the union.

In preparation for the meeting, Dwyer reviewed the statements taken by Western and discussed them with Slevira. Dwyer and another union representative accompanied Slevira at the Step II meeting where Dwyer introduced Slevira to the management representative and allowed Slevira to explain that he created the mechanical problems as "training for the next shift." Western took the firm position that such actions were not authorized training and denied the grievance and settlement offer.

After the Step II meeting, Dwyer asked Western to reconsider the settlement offer, but Western declined.

In deciding whether to proceed to arbitration, Dwyer sent the employee statements to the union's attorney who concluded that "[u]pon my review of the documents[,] the only defense he would have would be that he did not do anything at all." Based on counsel's assessment, his discussions with Slevira, and his own review of Western's statements, Dwyer decided against arbitration.

Slevira filed a complaint in district court alleging that he was fired without just cause and that the union breached its duty of fair representation by failing to consider the defense that he created the plant malfunctions as training simulations and that such simulations were customary practice in training new leadmen. The district court granted summary judgment because the union provided a sufficient explanation for not pursuing arbitration.

## II

The parties agree that Slevira's action against Western can succeed only if the union breached its duty of fair representation. *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). To establish that a union breached its duty of fair representation, an employee must show that the union's processing of the grievance was "arbitrary, discriminatory, or in bad faith." *Id.* at 190, 87 S.Ct. 903. Mere negligence on the part of the union does not constitute a breach of the duty of fair representation. *See Peters v. Burlington N. R.R.,* 931 F.2d 534, 539 (9th Cir.1990). Slevira contends that the union acted arbitrarily because it failed to consider his defense that he simulated the mechanical failures as a training exercise. He relies primarily on the proposition in *Peters* that "[w]hen a union inexplicably ignores a strong substantive argument ... the egregious nature of its failure transcends mere negligence." *Id.*

In determining whether a union handled a grievance arbitrarily by failing to consider a presumably meritorious argument, we consider whether the union: (1) has deliberated the alleged meritorious argument, *see Stevens,* 18 F.3d at 1448 ("[T]he Appellants offered no evidence that the union handled their grievance in a perfunctory fashion."); *Peters,* 931 F.2d at 540 ("[W]e must be able to determine whether the union deliberated the issue ...."); and (2) can provide an explanation for its decision not to pursue the argument. *See Patterson v. International Bhd. of Teamsters, Local 959,* 121 F.3d 1345, 1349 (9th Cir.1997) ("The union's explanation for not presenting the medical evidence is reasonable."); *Stevens,* 18 F.3d at 1448 ("In the case before us, however, the union did provide an explanation" for not pursuing the employee's grievance.); *Peters,* 931 F.2d at 541("[T]he union has failed to explain the basis for its failure to point the referee who heard the grievance to Article I, Section 7 of the Agreement.").

In addition, in accordance with the broad discretion traditionally owed to unions, we do not scrutinize the quality of the union's decision. *See Stevens,* 18 F.3d at 1447 ("[W]e have held consistently that unions are not liable for good faith, non-discriminatory errors of judgment made in the processing of grievances."); *Herring v. Delta Air Lines, Inc.,* 894 F.2d 1020, 1023 (9th Cir.1989) ("[A union] must be able to focus on the needs of its whole membership without undue fear of law suits from individual members."); *Dutrisac v. Caterpillar Tractor Co.,* 749 F.2d 1270, 1273 (9th Cir.1983) ("Because the union must balance many collective and individual interests when it decides whether and to what extent to pursue a particular grievance, courts should accord substantial deference to the union's decisions.").

## III

In the instant case, we must first consider whether Slevira has shown that the union failed to deliberate sufficiently his presumably meritorious defense that he simulated the mechanical failures as a

training exercise and according to the leadman's custom. *See Peters,* 931 F.2d at 541. In *Peters,* the employee identified a provision of the collective bargaining agreement, which the union failed to raise at the arbitration. *See id.* at 540. The employee demonstrated that this provision likely made him eligible for the benefits he sought through the arbitration. *See id.* We reasoned that because the union failed to raise such an obviously meritorious argument, the employee established a question of material fact as to whether the union deliberated in the first place. *See id.*

Here, Slevira provides no evidence comparable to the contract provision in *Peters* that implicates the union's failure to deliberate. To the contrary, while the burden is Slevira's, the union has shown that it considered Slevira's argument at length. It is undisputed that a union official interviewed Slevira for nearly two hours about the incident and that Slevira's sole defense to the company's discipline was that he intended his actions to be a training exercise and that he had been similarly trained when he was a leadman trainee. Moreover, the same union official examined the employee statements taken by Western, accompanied Slevira to the Step II meeting, and obtained the advice of counsel regarding whether Slevira had a viable defense. These actions are the essence of the deliberative process.

The union also offered a reason for not pursuing Slevira's grievance to arbitration. *See Stevens,* 18 F.3d at 1448. The union counsel's letter outlines that after reviewing the employee statements, he concluded that Slevira had no defense against the grounds of termination. Slevira argued that the letter is evidence of the union's failure to deliberate because it fails to address specifically his training defense. However, the statements refer to Slevira's claimed training defense, and with this information before him, counsel unequivocally concluded that Slevira had no defense. If we were to require a more detailed explanation, we would be second-guessing "the union's judgment as to how best to handle a grievance." *See Patterson,* 121 F.3d at 1349.

The union deliberated Slevira's alleged meritorious argument and explained it was not worth pursuing to arbitration. This deliberation and explanation sufficiently demonstrates that the union did not act arbitrarily in handling Slevira's grievance.

■ Finally, we hold, because Slevira failed to demonstrate that the union breached its duty of fair representation, his claim against Western for wrongful termination under Section 301 of the Labor Management Relations Act also fails. *See Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) ("To prevail against . . . the company . . . petitioners must . . . show . . . breach of duty by the Union.").

AFFIRMED.