### Dyan A. TRUESDELL, Plaintiff–Appellant,

v.

### SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, a partnership; and the Hospital and Service Employees International Union, Local 399, Defendants–Appellees.

No. 01–56228.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 2002.

Filed June 20, 2002.

---

Jerome Zamos, Law Offices of Jerome Zamos, Woodland Hills, CA, for plaintiff-appellant.

Thomas R. Kaufman, Seyfarth Shaw, James G. Varga and Monica T. Guizar, Van Bourg, Weinberg, Roger & Rosenfeld, Los Angeles, CA, for defendants-appellees.

Before KLEINFELD and GRABER, Circuit Judges, and BOLTON,* District Judge.

## OPINION

GRABER, Circuit Judge.

Plaintiff Dyan Truesdell sued her former employer, Southern California Permanente Medical Group (Permanente), and her union, The Hospital and Service Employees International Union, Local 399 (the Union), alleging wrongful termination and breach of the duty of fair representation. Arguing that the complaint was factually misleading and legally without merit, Permanente moved for sanctions under Federal Rule of Civil Procedure 11 against Plaintiff's lawyer. The district court granted the motion. We vacate the district court's order and remand for reconsideration in the light of our recent opinion in *Christian v. Mattel, Inc.,* 286 F.3d 1118 (9th Cir.2002).

## FACTS AND PROCEDURAL HISTORY

A. *The Employment Dispute*

Between April 1996 and November 1, 1999, Plaintiff worked part-time for Permanente as a cytotechnologist. In that capacity, she examined slides from PAP smears to determine whether the tests revealed any cellular irregularities. She worked under the terms of a collective bargaining agreement (the Agreement) between Permanente and the Union, in which the parties agreed to resolve disputes through procedures that ultimately led to binding arbitration. The Union pursued claims on behalf of its members.

As a matter of course, whenever a patient had a positive PAP smear, Permanente reviewed all negative slides from the immediately preceding five years for that patient. During one (or more) of those regular five-year reviews, Permanente discovered four misreadings by Plaintiff. She had deemed the slides "within normal limits" but, in fact, the slides revealed "high-grade abnormalities." The four misread-

---

* The Honorable Susan R. Bolton, United States District Court for the District of Arizona, sitting by designation.

ings occurred between September 25, 1996, and November 21, 1997.

On November 1, 1999, upon discovering those four misreadings, Permanente terminated Plaintiff's employment. Plaintiff grieved her discharge under the procedures provided for in the Agreement and, ultimately, the dispute was submitted to an arbitrator.

At arbitration, the Union conceded that the four identified slides had been misread and that certain documents could be admitted in evidence. Among the stipulated documents were two "written counseling" memoranda that Permanente had issued after Plaintiff misread slides on two additional occasions. One memorandum was sent shortly after Plaintiff was hired in 1996, and the other was sent in September of 1998. The Union contended that Plaintiff had improved in response to the September 1998 counseling memorandum and argued that Permanente did not have "just cause" to terminate her for errors in slides read years earlier.

The arbitrator agreed with the Union. He noted that Permanente had no evidence of unsatisfactory work after September 1998—the date of the last counseling memorandum. The arbitrator reinstated Plaintiff because, in his opinion, Permanente's evidence did not meet the "just cause" standard. However, he concluded that Permanente's evidence was sufficient to raise a legitimate question about Plaintiff's competence. The arbitrator declined to award back pay on the ground that it was necessary to "impress upon Plaintiff the seriousness of the mistakes she had made, and the 'serious consequences' of those mistakes."

## B. *Procedural Background*

Plaintiff was not satisfied with the result of the arbitration. She filed an action for disability discrimination[1] against Permanente under the Americans with Disabilities Act and the parallel state statute.

At Plaintiff's deposition, her counsel gave Permanente a letter asking its consent to an amendment of the complaint. Counsel wanted to add a claim against Permanente and the Union under § 301 of the Labor–Management Relations Act. Specifically, Plaintiff wanted to allege that the Union breached a duty to her by stipulating to the admission of the counseling memoranda, by failing to argue for a one-year limitation on Permanente's ability to consider errors, and by failing to argue that Permanente should have disclosed certain documents in the arbitration, including statistics assessing other terminations. Also, Plaintiff sought to claim that Permanente had failed to comply with the Agreement because it terminated Plaintiff's employment for errors that occurred more than one year earlier.

Permanente's counsel would not agree to the amendment because he thought that the additional claims were frivolous. Permanente's counsel explained to Plaintiff's counsel that "one cannot overturn an arbitration merely by alleging one's union erred in its handling of the grievance (if what [Plaintiff's counsel] was describing could even be characterized as errors)." Permanente's counsel asked Plaintiff not to amend the complaint and told Plaintiff's counsel that, if he chose to do so, he would have to seek leave from the district court. Plaintiff's counsel explained that he did not want to seek leave to amend because he had been denied leave to amend in an earlier case. He told Permanente's counsel that, if counsel did not agree to the amendment, he would file a separate action and then seek to have it consolidated with the disability-discrimination action. Permanente's counsel objected and sent a let-

1. Plaintiff is hearing-impaired.

ter to Plaintiff's counsel stating that, if Plaintiff did file a second and separate action, Permanente would seek Rule 11 sanctions.

Undeterred, Plaintiff's counsel filed this second, separate action. After yet another attempt to persuade Plaintiff's counsel to withdraw this action, Permanente sent a letter to Plaintiff's counsel informing him that Permanente would seek Rule 11 sanctions if the complaint were not withdrawn. Finally, in compliance with the Rule, Permanente served a filing-ready motion for sanctions on Plaintiff's counsel on March 29, 2001.

As grounds for sanctions, Permanente argued that any reasonable lawyer would know that the facts alleged in the second complaint do not give rise to a claim under § 301. Even if all the allegations are taken as true, the facts do not support a breach of the duty of fair representation under established Supreme Court precedent.

Further, Permanente argued that Plaintiff's counsel made allegations in the second complaint that he knew were false. Specifically, the complaint alleged:

PLAINTIFF is informed, and based upon such belief alleges that despite the continuing request of PLAINTIFF, and persons acting on her behalf, that [the Union] obtain statistical records from [Permanente] *which would have demonstrated that no one employed at [Permanente's] Sherman Way Reference Laboratory had ever been terminated as a result of the types of errors which PLAINTIFF had allegedly made between July of 1996 and September 28, 1998,* it made no attempt to either obtain or use those records to attack her wrongful termination.

PLAINTIFF is informed, and based upon such belief alleges that despite the continuing request of PLAINTIFF and persons acting on her behalf that [the Union] obtain statistical records from [Permanente] *which would have demonstrated that no one employed at [Permanente's] Sherman Reference Laboratory had ever been terminated on similar grounds,* [the Union] failed and neglected to do so.

(Emphasis added.)

In fact, Plaintiff's counsel *represented* a cytotechnologist who had been terminated on similar grounds, that is, for errors in reading slides. Because of this prior representation of a similarly situated plaintiff, Permanente contended that Plaintiff's counsel must have known that the allegations in this complaint were false.

### C. District Court's Rulings

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Permanente moved to dismiss the complaint. Even though he already had been served with the sanctions motion, Plaintiff's counsel filed papers opposing the motion to dismiss. Initially, the district court set a hearing date of April 21 to rule on the motion to dismiss. However, on April 18 the court canceled the hearing and dismissed the complaint because of its "patent meritlessness." [2] *Truesdell v. S. Cal. Permanente Med. Group,* 151 F.Supp.2d 1174, 1191 n. 17 (C.D.Cal.2001). Thus, the court ruled 20 days into the 21 day "safe-harbor" period provided by Rule 11.

The complaint was dismissed without prejudice. The court ruled that "Plaintiff may file a First Amended Complaint, by no later than May 15, 2001, *only* if Plaintiff

**2.** We affirm the district court's dismissal of the complaint in an unpublished disposition,

filed this date.

may plausibly allege that [the Union] engaged in discriminatory or bad faith conduct in the pursuit of her termination grievance." *Truesdell v. S. Cal. Permanente Med. Group,* 151 F.Supp.2d 1161, 1174 (C.D.Cal.2001) (footnote omitted). In a footnote, the court noted that the complaint would be dismissed, with prejudice, if Plaintiff did not amend the complaint before May 15.

On April 25, which was 27 days after it had served the motion on Plaintiff's counsel, Permanente filed its motion for sanctions with the district court. For ease of reference, here is the series of events in chronological order:

March 21, 2001 Plaintiff filed the allegedly offending complaint.

March 29, 2001 After informally warning Plaintiff's counsel in person and by letter, Permanente *served* a filing-ready motion for Rule 11 sanctions on Plaintiff's counsel. With that service, the 21 day safe-harbor period began to run.

April 18, 2001 The district court dismissed the complaint with leave to amend, 20 days after the safe-harbor period began.

April 25, 2001 Permanente *filed* the Rule 11 motion with the court, 27 days after serving it on Plaintiff's counsel.

May 15, 2001 The district court dismissed Plaintiff's complaint with prejudice.

The district court held a hearing on the sanctions issue. At this hearing, Plaintiff's counsel raised the argument that, because the court ruled on the offending pleading within the 21 days that Rule 11 affords a party to withdraw a challenged filing, the court effectively cut his safe-harbor period one day short.

Ultimately, the district court concluded that its "early" ruling did not affect its power to impose sanctions. In a published opinion, the court ordered sanctions of $4,945 to cover Permanente's fees. *Truesdell,* 151 F.Supp.2d at 1191–92. The district court emphasized that it was sanctioning Plaintiff's counsel for making an unreasonable and specious argument based on an objectively unreasonable interpretation of the Agreement. *Id.* at 1187. Also, the court determined that Plaintiff's counsel had made allegations that he should have known were false due to his representation of the other terminated cytotechnologist. *Id.* at 1188. Plaintiff's counsel timely appealed the sanctions order.

## STANDARD OF REVIEW

■■■ We review for abuse of discretion a district court's grant of sanctions under Rule 11. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). A district court necessarily abuses its discretion when it makes an error of law. *Id.*

## DISCUSSION

### A. *The Safe-harbor Issue*

■■■ *As a threshold matter, we must determine the effect of* the district court's dismissal of the underlying complaint, with leave to amend, on the 20th day after service of the motion for sanctions. Where, as here, sanctions are initiated by motion, Rule 11 provides for a mandatory 21 day safe-harbor period before a motion for sanctions is filed with the court. Fed. R.Civ.P. 11(c)(1)(A). The movant serves the allegedly offending party with a filing-ready motion as notice that it plans to seek sanctions. After 21 days, if the offending party has not withdrawn the filing, the movant may file the Rule 11 motion with the court. This period is meant to give litigants an opportunity to remedy any alleged misconduct before sanctions are im-

posed. Fed.R.Civ.P. 11 advisory committee's notes to 1993 amends.

■ Plaintiff's counsel argues that the district court, by ruling on the 20th day, cut off the last day of this 21–day safe-harbor period. In the circumstances of this case, we disagree.

Both technically and practically, Plaintiff's counsel had the full 21–day period that the Rule and our precedents require. As a technical matter, the moving party complied with the Rule's 21–day provision by waiting 27 days to file its motion. As a practical matter, Plaintiff's counsel had the full safe-harbor period in which to withdraw the complaint because the district court's decision on the 20th day dismissed the complaint *with leave to amend.*

In *Barber v. Miller,* 146 F.3d 707, 710–11 (9th Cir.1998), we recognized that the safe-harbor period is mandatory. We vacated a sanctions order that had been issued when the Rule 11 motion was both served on the allegedly offending party and filed with the court *after* the offending complaint had been dismissed. *Id.* at 710. We held that "[a] motion *served* after the complaint had been dismissed" deprived opposing counsel of any opportunity to take advantage of the safe-harbor provision. *Id.* at 710 (emphasis added); *see also Radcliffe v. Rainbow Constr. Co.,* 254 F.3d 772, 789 (9th Cir.) (discussing *Barber* and emphasizing that a motion for sanctions must be served on the opposing party at least 21 days before it is filed with the court), *cert. denied,* —— U.S. ——, 122 S.Ct. 545, 151 L.Ed.2d 423 (2001).

*Barber* concerned the *movant's* delay in filing a request for Rule 11 sanctions. 146 F.3d at 710–11. We held that a party may not wait to serve its motion for sanctions until the court has ruled on the offending filing. *Id.; see also* Fed.R.Civ.P. 11 advisory committee's notes to 1993 amends. (stating that, "[g]iven the 'safe harbor' provisions ..., a party cannot delay serving

its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)"). Once the court has dismissed the action with prejudice, counsel cannot withdraw the pleading. Allowing a party to wait until judgment is entered before serving a Rule 11 motion would effectively eliminate the safe harbor altogether.

Here, however, Permanente did not delay and thereby negate the safe harbor's protections. Rather, Permanente served its Rule 11 motion on Plaintiff's counsel at the same time it filed a motion to dismiss the complaint. After 27 days passed, Defendant filed the sanctions motion with the district court. Unlike the party that sought sanctions in *Barber,* Defendant complied with the Rule's 21–day requirement.

Nor as a practical matter did the district court cut off the safe-harbor period, because it dismissed the complaint *with leave to amend.* The court ruled that "Plaintiff may file a First Amended Complaint, by no later than May 15, 2001, *only* if Plaintiff may plausibly allege that [the Union] engaged in discriminatory or bad faith conduct in the pursuit of her termination grievance." *Truesdell,* 151 F.Supp.2d at 1174 (footnote omitted). Thus, the district court not only allowed Plaintiff an opportunity to amend her complaint to state a claim, but also described exactly how to remedy one of the defects that Permanente had pointed out in its Rule 11 motion. The court noted that the failure to file a First Amended Complaint by the May 15 deadline would result in dismissal of the entire case *with* prejudice. May 15 was, of course, well beyond the 21–day safe-harbor period.

In other words, even after the district court's decision, the safe-harbor period was still running. Plaintiff's counsel had more than the full 21–day opportunity that

Rule 11 affords him to withdraw, amend, or disclaim the filing. For example, counsel could have amended the complaint to cure the Rule 11 defects. *See Loux v. Rhay,* 375 F.2d 55, 57 (9th Cir.1967) (noting that the effect of an amended complaint is to supersede the original and render it "non-existent"). Counsel could have affirmatively withdrawn the complaint or formally disclaimed any intention of filing an amended complaint, while making clear that he was taking advantage of the safe-harbor period. The mandatory safe-harbor period still was available. Counsel simply elected not to take advantage of it.

Having decided that the mandatory safe-harbor period was afforded to counsel here, we proceed to the merits of the sanctions order.

### B. *The Merits*

The district court did not necessarily abuse its discretion in ordering sanctions. However, on this record, we must reverse and remand so that the district court may reconsider its decision in the light of our recent opinion in *Christian.*

■■■■ The district court concluded that Plaintiff's complaint was sanctionable because it was both legally frivolous and factually misleading. Rule 11(c) allows sanctions if a filing suffers from *either* of those defects. *See* Fed.R.Civ.P. 11(b)(2), (3). The district court did not err in ruling that Plaintiff's complaint suffered from both kinds of defects.

Examining the complaint's legal underpinnings, the district court applied the correct standard of objective reasonableness and properly concluded that no reasonable lawyer would have certified that the claims raised in Plaintiff's complaint were "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11(b)(2). Any reasonable lawyer would

have known, upon even the most casual investigation, that the law governing a union's duty of fair representation would not support a claim on these facts.

A union breaches its duty of fair representation only if its conduct is arbitrary, discriminatory, or in bad faith. *Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 51, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998); *United Steelworkers v. Rawson,* 495 U.S. 362, 372, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990); *Patterson v. Int'l Bhd. of Teamsters, Local 959,* 121 F.3d 1345, 1349 (9th Cir.1997); *Burkevich v. Air Line Pilots Ass'n, Int'l,* 894 F.2d 346, 349 (9th Cir. 1990). A union acts arbitrarily only when its actions have no rational basis. *Marquez,* 525 U.S. at 46, 119 S.Ct. 292. Plaintiff did not allege any such conduct here.

Plaintiff's counsel urges a strained interpretation of the Agreement. However, even if his interpretation were persuasive, the Union's failure to argue it could not constitute a breach of the duty of fair representation. *See Patterson,* 121 F.3d at 1349 (reaffirming that " '[w]e have never held that a union has acted in an arbitrary manner where the challenged conduct involved the union's judgment as to how best to handle a grievance' " (quoting *Peterson v. Kennedy,* 771 F.2d 1244, 1254 (9th Cir.1985))). Indeed, the Union's judgment was vindicated; notwithstanding the serious errors that Plaintiff had made, the Union succeeded in obtaining reinstatement for her based on its interpretation of the Agreement.

■■■■ Also, the district court properly concluded that "the allegations and other factual contentions" in Plaintiff's complaint lacked "evidentiary support." Fed. R.Civ.P. 11(b)(3). The complaint stated allegations "upon information and belief" that Plaintiff's counsel must have known were false. The complaint alleged that the Union breached its duty of fair representa-

tion by failing to demand statistical studies that would reflect that no employee of Permanente had ever been fired for misreading slides before. However, Plaintiff's counsel *represented* another cytotechnologist whom Permanente had fired for misreading slides. That other cytotechnologist's case was discussed at length in the arbitrator's decision in Plaintiff's case. The arbitrator's decision was attached to Plaintiff's complaint. Plaintiff's counsel simply had to know that such statistical evidence *could not* exist.

In this court, counsel says that those paragraphs in the complaint meant only that no Permanente employee had ever been terminated for errors that were more than one year old, not that no Permanente employee had ever been terminated for misreading slides. We have quoted the complaint above. It simply does not contain, and cannot be interpreted to contain, the purported limitation for which counsel now contends; nor did counsel take the opportunity to correct this defect after the complaint was dismissed *without* prejudice.

The district court did not abuse its discretion by ordering sanctions on this ground. By presenting this complaint to the court, Plaintiff's counsel certified that, "to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions ha[d] evidentiary support or, if specifically so identified, [were] likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b)(3). It was, at best, disingenuous to claim that statistical records in support of Plaintiff's theory must exist, when all along counsel had personal knowledge of another case that disproved his statistical argument.

■ Although we conclude that sanctions may rest on both of the substantive grounds on which the district court primarily relied, we must remand the case to the district court to clarify its reasons for imposing sanctions. At the time the district court ordered sanctions, it did not have the benefit of our decision in *Christian*. In that case, we emphasized that Rule 11 is directed at papers "signed in violation of the rule," not at general misconduct. *Christian*, 286 F.3d at 1131. We remanded there because we could not tell from the record whether the district court had imposed sanctions for a particular filing, or simply for counsel's extraneous "boorish conduct." *Id.* at 1130–31.

Here, the district court discussed at length *other* cases in which Plaintiff's counsel had filed frivolous complaints against Permanente. *Truesdell*, 151 F.Supp.2d at 1180–81. As part of its justification for the sanctions order, the court also referred to counsel's "history of prior sanctions, particularly his (mis)representations as to the scope and nature of that history." *Id.* at 1188. Although the district court occasionally distanced itself from explicitly relying on such past conduct, the lengthy discussion of the parties' history implies that past conduct may have contributed to the reasoning behind the sanctions award. *Id.* at 1180–81. As in *Christian*, we cannot tell from the record. We therefore vacate the sanctions award for reconsideration in the light of *Christian*.

Order awarding Rule 11 sanctions VACATED; REMANDED for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.