286 F.3d 1118
Harry R. CHRISTIAN, Plaintiff,v.MATTEL, INC., a corporation; Claudene Christian; Collegiate Doll Company, a sole proprietorship, Defendants-Appellees,James B. Hicks, Esq., Real-party-in-interest-Appellant.James B. Hicks, Esq., Appellant, andHarry R. Christian, an individual, Plaintiff-counter-defendant,v.Mattel, Inc., a corporation, Defendant-cross-claimant-Appellee.
No. 00-56194.
No. 00-56579.
United States Court of Appeals, Ninth Circuit.
Argued and Submitted January 16, 2002.
Filed April 15, 2002.

COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Kent L. Richland and Jessica M. Weisel, Greines, Martin, Stein & Richland LLP, Beverly Hills, CA, for the real-party-in-interest-appellant.
Adrian Mary Pruetz, Quinn Emanuel Urquhart Oliver & Hedges, LLP, Los Angeles, CA, for the defendant-appellee.
Appeal from the United States District Court for the Central District of California; Nora M. Manella, District Judge, Presiding. D.C. No. CV-99-02820-NM.
Before: SCHROEDER, Chief Judge, McKEOWN, Circuit Judge, and ZILLY,* District Judge.
McKEOWN, Circuit Judge.

1
It is difficult to imagine that the Barbie doll, so perfect in her sculpture and presentation, and so comfortable in every setting, from "California girl" to "Chief Executive Officer Barbie," could spawn such acrimonious litigation and such egregious conduct on the part of her challenger. In her wildest dreams, Barbie could not have imagined herself in the middle of Rule 11 proceedings. But the intersection of copyrights on Barbie sculptures and the scope of Rule 11 is precisely what defines this case.

2
James Hicks appeals from a district court order requiring him, pursuant to Federal Rule of Civil Procedure 11, to pay Mattel, Inc. $501,565 in attorneys' fees that it incurred in defending against what the district court determined to be a frivolous action. Hicks brought suit on behalf of Harry Christian, claiming that Mattel's Barbie dolls infringed Christian's Claudene doll sculpture copyright. In its sanctions orders, the district court found that Hicks should have discovered prior to commencing the civil action that Mattel's dolls could not have infringed Christian's copyright because, among other things, the Mattel dolls had been created well prior to the Claudene doll and the Mattel dolls had clearly visible copyright notices on their heads. After determining that Hicks had behaved "boorishly" during discovery and had a lengthy rap sheet of prior litigation misconduct, the district court imposed sanctions.

3
We hold that the district court did not abuse its discretion in determining that the complaint filed by Hicks was frivolous under Rule 11. In parsing the language of the district court's sanctions orders, however, we cannot determine with any degree of certainty whether the district court grounded its Rule 11 decision on Hicks' misconduct that occurred outside the pleadings, such as in oral argument, at a meeting of counsel, and at a key deposition. This is an important distinction because Rule 11 sanctions are limited to misconduct regarding signed pleadings, motions, and other filings. Fed.R.Civ.P. 11. Consequently, we vacate the district court's orders and remand for further proceedings consistent with this opinion. In so doing, we do not condone Hicks' conduct or suggest that the district court did not have a firm basis for awarding sanctions. Indeed, the district court undertook a careful and exhaustive examination of the facts and the legal underpinnings of the copyright challenge. Rather, the remand is to assure that any Rule 11 sanctions are grounded in conduct covered by Rule 11 and to ensure adequate findings for the sizeable fee award.

BACKGROUND

4
As context for examining the district court's determination that the underlying copyright action was frivolous, we begin by discussing the long history of litigation between Mattel and Hicks' past and current clients: Harry Christian; Christian's daughter, Claudene; and the Collegiate Doll Company ("CDC"), Claudene's proprietorship.

I. PRIOR LITIGATION BETWEEN MATTEL AND CDC

5
Mattel is a toy company that is perhaps best recognized as the manufacturer of the world-famous Barbie doll. Since Barbie's creation in 1959, Mattel has outfitted her in fashions and accessories that have evolved over time. In perhaps the most classic embodiment, Barbie is depicted as a slender-figured doll with long blonde hair and blue eyes. Mattel has sought to protect its intellectual property by registering various Barbie-related copyrights, including copyrights protecting the doll's head sculpture. Mattel has vigorously litigated against putative infringers.

6
In 1990, Claudene Christian, then an undergraduate student at the University of Southern California ("USC"), decided to create and market a collegiate cheerleader doll. The doll, which the parties refer to throughout their papers as "Claudene," had blonde hair and blue eyes and was outfitted to resemble a USC cheerleader.

7
Mattel soon learned about the Claudene doll. After concluding that it infringed certain Barbie copyrights, Mattel brought an administrative action before the United States Customs Service in 1996 in which it alleged that the Claudene doll, manufactured abroad, had pirated the head sculpture of the "Teen Talk" and "SuperStar" Barbies. The Customs Service ruled in CDC's favor and subsequently released a shipment of Claudene dolls.1 Undaunted, Mattel commenced a federal court action in 1997 in which it once again alleged that CDC infringed various of Mattel's copyrights. At the time, Claudene Christian was president of CDC and Harry Christian was listed as co-founder of the company and chief financial officer. CDC retained Hicks as its counsel. After the court dismissed CDC's multiple counterclaims, the case was settled. Mattel released CDC from any copyright infringement liability in exchange for, among other things, a stipulation that Mattel was free to challenge CDC's alleged copyright of the Claudene doll should CDC "or any successor in interest" challenge Mattel's right to market its Barbie dolls.

II. THE PRESENT ACTION

8
Seizing on a loophole in the parties' settlement agreement, within weeks of the agreement, Harry Christian, who was not a signatory to the agreement, retained Hicks as his counsel and filed a federal court action against Mattel. In the complaint, which Hicks signed, Christian alleged that Mattel obtained a copy of the copyrighted Claudene doll in 1996, the year of its creation,2 and then infringed its overall appearance, including its face paint, by developing a new Barbie line called "Cool Blue" that was substantially similar to Claudene. Christian sought damages in the amount of $2.4 billion and various forms of injunctive relief. In an apparent effort to demonstrate that the action was not a sham, Claudene Christian and CDC were also named as defendants. Subsequently, Hicks alleged in a letter to Mattel's counsel that an additional doll called "Virginia Tech University Barbie" also infringed the Claudene doll copyright. Hicks, however, never amended the complaint to plead allegations about Virginia Tech Barbie.

9
Two months after the complaint was filed, Mattel moved for summary judgment. In support of its motion, Mattel proffered evidence that the Cool Blue Barbie doll contained a 1991 copyright notice on the back of its head, indicating that it predated Claudene's head sculpture copyright by approximately six years.3 Mattel therefore argued that Cool Blue Barbie could not as a matter of law infringe Claudene's head sculpture copyright. Mattel similarly contended that the copyright on the Virginia Tech Barbie's head sculpture also significantly predated the purported copyright on the Claudene head sculpture. Virginia Tech Barbie and other Barbie dolls contained a head sculpture that was copyrighted in 1976 and originally appeared on SuperStar Barbie.

10
At a follow-up counsel meeting required by a local rule, Mattel's counsel attempted to convince Hicks that his complaint was frivolous. During the videotaped meeting, they presented Hicks with copies of various Barbie dolls that not only had been created prior to 1996 (the date of Claudene's creation), but also had copyright designations on their heads that pre-dated Claudene's creation. Additionally, Mattel's counsel noted that the face paint on some of the earlier-created Barbie dolls was virtually identical to that used on Claudene. Hicks declined Mattel's invitation to inspect the dolls and, later during the meeting, hurled them in disgust from a conference table.

11
Having been unsuccessful in convincing Hicks to dismiss Christian's action voluntarily, Mattel served Hicks with a motion for Rule 11 sanctions. In its motion papers, Mattel argued, among other things, that Hicks had signed and filed a frivolous complaint based on a legally meritless theory that Mattel's prior-created head sculptures infringed Claudene's 1997 copyright. Hicks declined to withdraw the complaint during the 21-day safe harbor period provided by Rule 11, and Mattel filed its motion.

12
Seemingly unfazed by Mattel's Rule 11 motion, Hicks proceeded with the litigation and filed a motion pursuant to Federal Rule of Civil Procedure 56(f) to obtain additional discovery. In particular, he sought information regarding the face painting on certain Barbie dolls and the face paint/head sculpture combinations used by Mattel after 1996. The district court summarily denied the motion. It later noted, in the context of its summary judgment order, that "it is unclear what [Christian] is requesting when he seeks access to post-1996 Barbies."

13
Hicks then began filing additional papers that were characterized by frequency and volume. Following official completion of the summary judgment briefing schedule, Hicks filed what was styled as a "supplemental opposition." In those papers, Christian asserted for the first time that the head sculpture of Mattel's CEO Barbie (which was created in 1998) infringed Christian's copyright in the Claudene doll. He did not, however, move for leave to amend the complaint.

14
Hicks later filed additional papers alleging that several additional Barbie dolls infringed the Claudene sculpture. As with CEO Barbie, no motion for leave to amend the complaint was filed. Then, following oral argument, Hicks filed a copy of a supplemental registration of Claudene that the United States Copyright Office had issued five days prior to the argument. The supplemental registration clarified that the nature of the original Claudene copyright "was intended to be the sculpture and the painted face" and that the nature of authorship covered both two-dimensional artwork and three-dimensional sculpture.

III. THE DISTRICT COURT'S ORDERS

15
The district court granted Mattel's motions for summary judgment and Rule 11 sanctions. The court ruled that Mattel did not infringe the 1997 Claudene copyright because it could not possibly have accessed the Claudene doll at the time it created the head sculptures of the Cool Blue (copyrighted in 1991) and Virginia Tech (copyrighted in 1976) Barbies. The court also rejected Christian's theory that the Mattel dolls had infringed the totality of Claudene's appearance, including its face paint, because the copyright is "limited in scope and extends only to 3-dimensional sculptures and not 2-Dimensional artwork...." Alternatively, the court found that Mattel had been using lighter-colored face paint "on dolls produced before the Claudene doll was created in 1996, such as Colonial Barbie (1994) and Pioneer Barbie (1995)," and therefore could not have infringed the later-created Claudene doll even if the Claudene copyright protected two-dimensional artwork. Finally, the court found that Mattel, as owner of various Barbie head sculpture copyrights, had "the exclusive right to prepare derivative works of its own copyrighted works. See 17 U.S.C. § 106(2). Thus, Mattel has the right to paint and re-paint its own copyrighted sculptures."

16
In adjudicating the summary judgment motion, the district court did not consider any of Christian's supplemental summary judgment filings. It noted that the papers not only "exceeded the permissible page limits," but also "failed to adhere to Local Rule 3.4.1," which established various type font requirements.

17
As for Mattel's Rule 11 motion, the district court found that Hicks had "filed a meritless claim against defendant Mattel. A reasonable investigation by Mr. Hicks would have revealed that there was no factual foundation for [Christian's] copyright claim." Indeed, the district court noted that Hicks needed to do little more than examine "the back of the heads of the Barbie dolls he claims were infringing," because such a perfunctory inquiry would have revealed "the pre-1996 copyright notices on the Cool Blue and [Virginia Tech] Barbie doll heads."

18
Additionally, the district court made other findings regarding Hicks' misconduct in litigating against Mattel, all of which demonstrated that his conduct fell "below the standards of attorneys practicing in the Central District of California." The district court singled out the following conduct:

19
• Sanctions imposed by the district court against Hicks in a related action against Mattel for failing, among other things, to file a memorandum of law in support of papers styled as a motion to dismiss and failing to appear at oral argument;

20
• Hicks' behavior during the Early Meeting of Counsel, in which he "toss[ed] Barbie dolls off a table";

21
• Hicks' interruption of Christian's deposition after Christian made a "damaging admission ... that a pre-1996 Barbie doll allegedly infringed the later created Claudene doll head...." When asked whether the prior-created Pioneer Barbie doll infringed Claudene, Christian stated, "I think so ... [b]ecause it's got the look...." At that juncture, Hicks requested an immediate recess, during which he lambasted his client in plain view of Mattel's attorneys and the video camera.

22
• Hicks' misrepresentations during oral argument on Mattel's summary judgment motion about the number of dolls alleged in the complaint to be infringing and whether he had ever reviewed a particular Barbie catalogue (when a videotape presented to the district court by Mattel demonstrated that Hicks had reviewed it during a deposition);

23
• Hicks' misstatement of law in a summary judgment opposition brief about the circuit's holdings regarding joint authorship of copyrightable works.

24
After Mattel submitted a general description of the fees that it incurred in defending against Christian's action, the court requested Mattel to submit a more specific itemization and description of work performed by its attorneys. Mattel complied.

25
The district court awarded Mattel $501,565 in attorneys' fees. At the outset of its order, the court summarized the findings in its earlier order, namely that it had "predicated its [Rule 11] decision" on Hicks' filing a frivolous complaint and "further found" that he had "`behaved boorishly, misrepresented the facts and misstated the law.'" In discussing Rule 11's purpose of deterring such conduct, the district court made further findings about Hicks' behavior during prior proceedings — some of which were completely unrelated to this case. The prior litigation referenced by the district court included the following:

26
• The district court's earlier award of attorneys' fees to Mattel in a related action, and certain behavior by Hicks during the earlier-settled copyright infringement action that Mattel had filed against CDC;

27
• Hicks' failure to comply with a briefing schedule established by the First Circuit in an unrelated action in 1996; and

28
• Hicks' filing of conclusory opposition papers in an unrelated action in the Southern District of New York in response to a summary judgment motion in 1986.

29
The district court next considered various arguments that Hicks had advanced in opposition to Mattel's fee application. Hicks first contended, without much elaboration, that a fee award would have a "ruinous" effect on his finances and ability to practice law.4 The district court held, however, that "repeated reprimands and sanctions" imposed in prior litigations "clearly have not had the desired deterrent effect on his behavior," and it concluded that Hicks would not be punished sufficiently if the court were to impose mere "non-monetary sanctions." Hicks also argued (somewhat ironically) that Mattel's fees request was excessive in light of how simplistic it should have been to defend against Christian's action. The district court disagreed, reasoning that like the court in Brandt v. Schal Assocs., Inc., 960 F.2d 640, 648 (7th Cir.1992), the judiciary has "`little sympathy for the litigant who fires a big gun, and when the adversary returns fire, complains because he was firing blanks.'"

30
Having rejected Hicks' reasons for eschewing a fees award, the district court made the following observations and findings:

31
The court has considered whether an award of monetary sanctions less than the fees actually incurred would represent an appropriate sanction. The court has concluded that it would not. There is no dispute that Mr. Hicks was directly responsible for filing and pursuing this frivolous suit. Nor is there any dispute that the fees sought were actually incurred and paid. Moreover, the court is satisfied from the documentation provided by Mattel's counsel that the fees incurred were reasonable. While recognizing the significant burden this award imposes, the court has concluded that in light of Mr. Hicks' failure to respond to lesser sanctions and his continuing disregard for the most basic rules governing an attorney's professional conduct, the costs of his unacceptable behavior should fall squarely on him. Finally, while the court may reimburse an adverse party for expenses incurred in disposing of frivolous litigation, it can never compensate the judicial system for the time spent to dispose of an action that should never have been brought. The court can only hope that a sanction of this size will, at last, put a stop to Mr. Hicks' continuing pattern of abuse.

32
Emphasis added.

33
* * * * * *

34
The court is satisfied that the other attorneys' fees Mattel has claimed are both reasonable and proximately caused by Mr. Hicks' pursuit of this frivolous action.5 [T]he Court grants Mattel its attorneys' fees in the amount of $501,565.00.

35
Original emphasis.

DISCUSSION
I. STANDARDS OF REVIEW

36
The standard of review is particularly important here with reference to the district court's summary judgment determination in favor of Mattel. That order has not been appealed and Christian is not a party to this appeal. Hicks argues that we should review the summary judgment order to determine whether there was a genuine issue of material fact as to whether Mattel infringed Claudene. While such a determination could be instructive in determining whether a complaint was frivolous when filed (because a plaintiff who survives a summary judgment motion would necessarily have demonstrated that there are triable, potentially meritorious issues), we review the district court's factual findings and legal conclusions under a far more deferential standard than the traditional de novo review of a summary judgment order. We review the district court's decision to impose Rule 11 sanctions — and, if they are warranted, the reasonableness of the actual amount imposed — for abuse of discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 401, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). In conducting our review of the district court's factual findings in support of the sanctions, we "would be justified in concluding that [the court] had abused its discretion in making [the findings] only if [they] were clearly erroneous." Id. at 386, 110 S.Ct. 2447. The district court's legal findings must be affirmed unless they result from a "materially incorrect view of the relevant law." Id. at 402, 110 S.Ct. 2447.

II. IMPOSITION OF RULE 11 SANCTIONS

37
The district court found that Hicks "filed a meritless claim against defendant Mattel. A reasonable investigation by Mr. Hicks would have revealed that there was no factual foundation for plaintiff's copyright claim." Hicks challenges these findings, arguing that the issues were "more complex" than the district court recognized. Before considering this operative issue, we first consider Rule 11 principles that guide our review.

A. GENERAL RULE 11 PRINCIPLES

38
Filing a complaint in federal court is no trifling undertaking. An attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact and "existing law" (or proposes a good faith extension of the existing law) and that it is not filed for an improper purpose.

Rule 11 provides in pertinent part:

39
(a) Signature. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name....

40
(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ...

41
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

42
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

43
Fed.R.Civ.P. 11.

44
The attorney has a duty prior to filing a complaint not only to conduct a reasonable factual investigation, but also to perform adequate legal research that confirms whether the theoretical underpinnings of the complaint are "warranted by existing law or a good faith argument for an extension, modification or reversal of existing law." Golden Eagle Distrib. Corp. v. Burroughs Corp., 801 F.2d 1531, 1537 (9th Cir.1986). One of the fundamental purposes of Rule 11 is to "reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers, ... [thereby] avoid[ing] delay and unnecessary expense in litigation." Id. at 1536 (internal quotation marks and citations omitted). Nonetheless, a finding of significant delay or expense is not required under Rule 11. Where, as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually "baseless" from an objective perspective, and (2) if the attorney has conducted "a reasonable and competent inquiry" before signing and filing it. Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir.1997).

45
B. THE DISTRICT COURT'S FINDINGS REGARDING THE MERITLESS CLAIM

46
1. DID HICKS HAVE AN ADEQUATE LEGAL OR FACTUAL BASIS FOR FILING THE COMPLAINT?

47
Hicks filed a single claim of copyright infringement against Mattel. The complaint charges that the Cool Blue Barbie infringed the copyright in the Claudene doll head. In addition, in a subsequent letter to Mattel's counsel, he claimed that Virginia Tech Barbie also infringed Claudene. Hicks cannot seriously dispute the district court's conclusions that, assuming the applicability of the doctrine of prior creation, Christian's complaint was legally and factually frivolous.6 Indeed, as a matter of copyright law, it is well established that a prior-created work cannot infringe a later-created one. See Grubb v. KMS Patriots, L.P., 88 F.3d 1, 5 (1st Cir.1996) (noting that "prior creation renders any conclusion of access or inference of copying illogical.").

48
Copyright infringement requires proof that a plaintiff owns a valid copyright in the work and that the defendant copied the work. Feist Pub'n, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Proof of copying often revolves around whether the defendant had sufficient access to copy the work. Access is only a theoretical issue in this case, however. By simple logic, it is impossible to copy something that does not exist. Thus, if Mattel created its doll sculptures before CDC created Claudene in 1994, it is factually and legally impossible for Mattel to be an infringer.

49
The record of creation is telling and conclusive. The Cool Blue Barbie doll uses the Neptune's Daughter doll head which was created in 1991, some six years before the Claudene doll. The Virginia Tech Barbie doll uses the SuperStar sculpture which Mattel created in 1976. The SuperStar doll was the subject of the just-completed federal court litigation, and Hicks should have been well aware of the prior creation, not to mention that the copyright notice (including date of creation) appears prominently on the back of the dolls' heads.

50
Recognizing the futility of attacking prior creation, Hicks argues that the paint on the Claudene doll's face features a light makeup that is distinctive and that the two Barbie dolls thus infringe Claudene's overall appearance and presentation. This argument fails because, among other things, Mattel used the light face paint on the Pioneer Barbie, which was created two years before the Claudene doll, thus defeating once again any claim of copying.7 It also bears noting that Mattel has been repainting various doll heads for decades. Under Hicks' theory, CDC's use of an infringing doll head coupled with "new" face paint would result in liability for Mattel's repainting of its prior-created Barbie doll sculptures. Neither common sense nor copyright law countenance such a result, even if the Claudene doll were deemed a derivative work. See Entm't Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1220 (9th Cir. 1997) (holding that owners of copyrighted works have broad latitude to copyright derivatives thereof if they have "adequate originality").8

51
In the face of facts and law clearly against his client, Hicks sought to resurrect the copyright claim by deluging the district court with supplemental filings, including entirely new claims regarding a different assortment of Barbie dolls and non-Barbie dolls. The dolls included, for example, the CEO doll, which used the 1991 Neptune's Daughter head with a modified mouth.

52
The district court did not consider any of Hicks' supplemental filings, noting that Hicks failed to comply with local rules regarding page limitations and typefaces. Given the chameleon nature of the claims and Hicks' flip-flop from the sculpture-plus-painting theory back to the sculpture-only theory, the district court was justified in putting an end to Hicks' serial filings. The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing. We cannot say that the court abused its discretion by declining to consider Hicks' multitudinous efforts to circumvent the court's local rules and to expand the scope of an already frivolous suit. At some point, enough is enough. See Ashton-Tate Corp. v. Ross, 916 F.2d 516, 520 (9th Cir.1990) (noting that "the process of evaluating a summary judgment motion would be flouted if requests for more time, discovery, or the introduction of supplemental affidavits had to be considered even if requested well after the deadline set for the introduction of all information needed to make a ruling has passed.").9

53
Consequently, in the face of undisputed evidence concerning the prior-creation of the Barbie dolls, the district court did not abuse its discretion by ruling that the complaint was frivolous.

54
2. DID HICKS CONDUCT AN ADEQUATE FACTUAL INVESTIGATION?

55
The district court concluded that Hicks "filed a case without factual foundation." Hicks, having argued unsuccessfully that his failure to perform even minimal due diligence was irrelevant as a matter of copyright law, does not contest that he would have been able to discover the copyright information simply by examining the doll heads. Instead he argues that the district court did not understand certain "complex" issues. Simply saying so does not make it so. The district court well understood the legal and factual background of the case. It was Hicks' absence of investigation, not the district court's absence of analysis, that brought about his downfall.

56
The district court did not abuse its discretion in concluding that Hicks' failure to investigate fell below the requisite standard established by Rule 11.

57
III. THE DISTRICT COURT'S ADDITIONAL FINDINGS REGARDING MISCONDUCT

58
Hicks argues that even if the district court were justified in sanctioning him under Rule 11 based on Christian's complaint and the follow-on motions, its conclusion was tainted because it impermissibly considered other misconduct that cannot be sanctioned under Rule 11, such as discovery abuses, misstatements made during oral argument, and conduct in other litigation.

59
Hicks' argument has merit. While Rule 11 permits the district court to sanction an attorney for conduct regarding "pleading[s], written motion[s], and other paper[s]" that have been signed and filed in a given case, Fed.R.Civ.P. 11(a), it does not authorize sanctions for, among other things, discovery abuses or misstatements made to the court during an oral presentation. See Bus. Guides, Inc. v. Chromatic Communications Enter., 892 F.2d 802, 813 (9th Cir.1989) (holding that misstatements made during oral argument cannot constitute sanctionable offenses under Rule 11); In re Yagman, 796 F.2d at 1187 (holding that discovery abuses cannot be sanctioned under Rule 11); see also Fed.R.Civ.P. 11, advisory committee notes, 1993 Amendments, Subdivisions (b) and (c) ("The rule applies only to assertions contained in papers filed with or submitted to the court. It does not cover matters arising for the first time during oral presentations to the court, when counsel may make statements that would not be made if there had been more time for study and reflection.").

60
In its January 5, 2000, order, the district court cited multiple bases for its Rule 11 findings:

61
Mr. Hicks has filed a case without factual foundation. Moreover, while this court cannot evaluate Mr. Hicks' conduct in the litigation before Judge Matz, his conduct in this case and the related one pending before this court has fallen below the standards expected of attorneys practicing in the Central District of California. In the related case, this court has already ordered Mr. Hicks to personally pay plaintiff's attorney's fees incurred as a result of his culpable conduct. Order of July 13, 1999 in CV99-4667. In connection with the instant motion and the discovery preceding it, he has behaved boorishly, misrepresented the facts, and misstated the law. Accordingly, the court grants defendant's motion for Rule 11 sanctions against Mr. Hicks.

62
Original emphasis.

63
In connection with the conclusion on boorish behavior, the court cited Hicks' conduct ("tossing Barbie dolls off a table") at a meeting of counsel and his interruption of a deposition following a damaging admission by his client. The charge of misrepresentation of facts was based on a statement made at oral argument that he had never seen a particular catalogue while a videotape of exhibit inspections showed him "leisurely thumbing through the catalogue." Hicks' conflicting representations in pleadings as to the identity of allegedly infringing Barbie dolls was an additional example of misrepresentation noted by the court. Finally, the court determined that Hicks made misrepresentations in his briefs concerning the law of joint authorship in the copyright context.

64
The district court's subsequent June 12, 2000, order contained a somewhat oblique description of why it had decided to sanction Hicks and reiterated the multiple broad categories that justified sanctions:

65
The court predicated its decision to impose sanctions on the finding that the claims Mr. Hicks brought against Mattel were `meritless' and `without factual foundation.' It further found that Mr. Hicks `has behaved boorishly, misrepresented the facts, and misstated the law.'

66
Further, in determining that monetary sanctions were appropriate, the district court considered Hicks' "failure to respond to lesser sanctions" imposed in earlier actions and his "continuing disregard for the most basic rules governing an attorneys' professional conduct."

67
The orders clearly demonstrate that the district court decided, at least in part, to sanction Hicks because he signed and filed a factually and legally meritless complaint and for misrepresentations in subsequent briefing. But the orders, coupled with the supporting examples, also strongly suggest that the court considered extra-pleadings conduct as a basis for Rule 11 sanctions. Although the court also referenced conduct in related litigation, it is unlikely that the court based its order on such conduct because Hicks had already been sanctioned for violating local rules in the context of the related litigation and the court noted that fact.

68
The laundry list of Hicks' outlandish conduct is a long one and raises serious questions as to his respect for the judicial process. Nonetheless, Rule 11 sanctions are limited to "paper[s]" signed in violation of the rule. Conduct in depositions, discovery meetings of counsel, oral representations at hearings, and behavior in prior proceedings do not fall within the ambit of Rule 11. Because we do not know for certain whether the district court granted Mattel's Rule 11 motion as a result of an impermissible intertwining of its conclusion about the complaint's frivolity and Hicks' extrinsic misconduct, we must vacate the district court's Rule 11 orders.10

69
We decline Mattel's suggestion that the district court's sanctions orders could be supported in their entirety under the court's inherent authority. To impose sanctions under its inherent authority, the district court must "make an explicit finding [which it did not do here] that counsel's conduct constituted or was tantamount to bad faith." Primus Auto. Fin. Serv., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir.1997) (internal quotation marks omitted). We acknowledge that the district court has a broad array of sanctions options at its disposal: Rule 11, 28 U.S.C. § 1927,11 and the court's inherent authority. Each of these sanctions alternatives has its own particular requirements, and it is important that the grounds be separately articulated to assure that the conduct at issue falls within the scope of the sanctions remedy. See, e.g., B.K.B. v. Maui Police Dep't., 276 F.3d 1091, 1107 (9th Cir.2002) (holding that misconduct committed "in an unreasonable and vexatious manner" that "multiplies the proceedings" violates § 1927); Fink v. Gomez, 239 F.3d 989, 991-992 (9th Cir.2001) (holding that sanctions may be imposed under the court's inherent authority for "bad faith" actions by counsel, "which includes a broad range of willful improper conduct"). On remand, the district court will have an opportunity to delineate the factual and legal basis for its sanctions orders.

70
IV. THE DISTRICT COURT'S DECISION TO AWARD ATTORNEYS' FEES

71
Hicks raises various challenges to the quantum of attorneys' fees. Because we are vacating the district court's Rule 11 orders on other legal grounds, we express no opinion at this stage about the particular reasonableness of any of the fees the district court elected to award Mattel. We do, however, encourage the district court on remand to ensure that the time spent by Mattel's attorneys was reasonably and appropriately spent in relation to both the patent frivolousness of Christian's complaint and the services directly caused by the sanctionable conduct.12 See Fed.R.Civ.P. 11, advisory committee notes, 1993 Amendments, Subdivisions (b) and (c) (noting that attorneys' fees may only be awarded under Rule 11 for those "services directly and unavoidably caused" by the sanctionable conduct).

CONCLUSION

72
We vacate the district court's Rule 11 orders and remand for further proceedings consistent with this opinion.

73
VACATED and REMANDED.

Notes:

*
The Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation

1
At that time, Claudene was referred to as the Collegiate Cheerleading Doll

2
The United States Copyright Office issued a certificate of registration on November 20, 1997, for "Claudene Doll Face and Head." The certificate specified the work's nature as "sculpture," and the "nature of authorship" as "3-dimensional sculpture."

3
Mattel derived Cool Blue Barbie's head sculpture from the earlier-created Neptune's Daughter Barbie

4
Hicks argues that the district court erred in failing to consider his ability to pay such considerable sanctions. Although we note language inIn re Yagman, 796 F.2d 1165 (9th Cir.1986) that appears to require the district court to make such a determination, see id. at 1185, the Yagman case predated the 1993 amendments to Rule 11. The Advisory Committee's notes concerning the amendments indicate that an attorney's financial wherewithal is only one of several factors that a district court may consider in deciding the amount of sanctions. See Fed.R.Civ.P. 11, advisory committee notes, 1993 Amendments, Subdivisions (b) and (c). Here, Hicks had an opportunity to present specific financial information to the district court, but merely argued conclusorily that the sanctions would be "ruinous." The district court acknowledged this argument. Nothing in Rule 11 mandates a specific weighing of this factor, however.

5
The district court elected not to award Mattel $24,520.50 of fees it incurred as a result of defending against CDC's cross-claims because Hicks did not represent CDC in this action

6
The district court did not explicitly delineate between the two concepts in its order. In ruling, however, that Christian's complaint was factually meritless because the Barbie dolls at issue had, as a matter of fact, been prior-created, it necessarily held, as a matter of law, that the copyright infringement claim was without legal merit as well

7
When shown a Pioneer Barbie doll at his deposition, Christian claimed that it infringed the Claudene doll. This fatal admission, which was made just before Hicks whisked him from the deposition room, underscores the frivolousness of Christian's claim

8
As a result of our prior-creation analysis, we need not delve into the derivative work claims nor do we address whether the certificate of copyright registration limited Christian's claim

9
Hicks also argues that the district court abused its discretion by failing to grant a Rule 56(f) continuance that would have permitted him to obtain additional discovery about various Barbie dolls. This effort does nothing to remedy Hicks' undoing as a result of the doctrine of prior creation. Additional discovery could not change the undisputed facts. Nor could the prior-creation problem be remedied though the immaterial information Hicks sought regarding the overall appearance of Barbie dolls created post-1996. The district court's denial of the motion was not an abuse of discretion

10
We emphasize that the district court's underlying order regarding summary judgment is not affected by this opinion. Nor do we disturb the district court's finding that Hicks filed "a case without factual foundation" or its other findings as to Hicks' misconduct

11
Section 1927 provides for imposition of "excess costs, expenses, and attorneys' fees" on counsel who "multiplies the proceedings in any case unreasonably and vexatiously."

12
For example, because the action was frivolous on its face, why would Mattel's attorneys need to spend 700 hours ($173,151.50 in fees) for the summary judgment motion and response? Although Hicks clearly complicated the proceedings through multiple filings, Mattel's theory and approach was stunningly simple and required little explication: (1) Mattel's Barbie dolls and face paint were prior copyright creations that could not infringe the after-created Claudene doll and (2) Christian was neither a contributor to nor owner of the copyright. This is not to say that Hicks' defense of the motion necessarily called for a timid response, but neither does it compel a bazooka approach