**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DEBORAH HOLGATE; ROBERT
HOLGATE,
                        *Plaintiffs,*

        and

BARRY LEVINSON,
                        *Appellant,*

                v.

JOHN BALDWIN; COMMUNITY
BANK OF NEVADA; HARD MONEY
FUNDING; JOHN BALDWIN TRUST;
LINDA M. NEWELL; MICHAEL J.
NEWELL; MIKE NEWELL,
                *Defendants-Appellees.*

No. 03-16532

D.C. No.
CV-02-00183-RLH

OPINION

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, District Judge, Presiding

Argued and Submitted
February 14, 2005—San Francisco, California

Filed September 30, 2005

Before: Dorothy W. Nelson, William A. Fletcher, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge D.W. Nelson

13735

## COUNSEL

Algimantas J. Bruzas (argued), Las Vegas, Nevada; Barry Levinson, Law Offices of Barry Levinson, Las Vegas, Nevada, for the appellant.

Gordon H. Warren (argued), D. Chris Albright (argued) and G. Mark Albright, Albright, Stoddard, Warnick & Palmer, Las Vegas, Nevada; Philip M. Ballif and Gordon H. Warren, Jones Vargas, Las Vegas, Nevada; Steve Morris and Jenny Sullivan Parker, Morris, Pickering & Sanner, Las Vegas, Nevada, for the appellees.

## OPINION

D.W. NELSON, Circuit Judge:

Barry Levinson appeals the district court's award of sanctions under Federal Rule of Civil Procedure 11 to (1) John Baldwin; (2) Michael and Linda Newell, Hard Money, Inc., and the John Kevin Baldwin Irrevocable Trust (hereinafter "the Newell defendants"); and (3) the Community Bank of Nevada (hereinafter "Community Bank"). In total, the district court ordered Levinson to pay $12,000 in sanctions. Levinson also appeals the district court's decision denying sanctions against the Newell defendants and Community Bank. The Newell defendants cross-appeal the amount of the sanctions as insufficient. We affirm the district court's award of Rule 11 sanctions to John Baldwin and the Newell defendants, but reverse the award of sanctions to Community Bank. We also affirm the district court's denial of sanctions to Levinson.

### FACTS AND PROCEDURAL BACKGROUND

This appeal centers on the appropriateness of Rule 11 sanctions against an attorney who filed a legally baseless complaint. On February 7, 2002, Levinson, counsel for Deborah and Robert Holgate, filed the complaint at issue in federal district court. In this complaint, the Holgates alleged federal civil rights and RICO violations, as well as state causes of action, resulting from the construction and financing of their home. In brief, the Holgates borrowed $640,000 from the Community Bank of Nevada to build their "dream home." When the costs of building their home ran over, the Holgates borrowed an additional $550,000 from Michael Newell and the Baldwin Trust to finish the job. After the Holgates defaulted on this loan, Newell and the Baldwin Trust foreclosed and completed the construction. The Holgates alleged that the defendants' actions related to the home's financing violated their civil rights and were otherwise in violation of state and federal law.

In reviewing the district court's award of sanctions we must determine whether each defendant satisfied Rule 11's safe harbor requirement. The timing of the service and filing of each defendant's motion for Rule 11 sanctions against Levinson are central to this determination. While each of the three defendants requested sanctions against Levinson based on the filing of the complaint, each defendant did so at different times in the course of the litigation.

On March 18, 2002, John Baldwin served Levinson with a proposed motion for Rule 11 sanctions. A month later, on April 17, 2002, Baldwin filed his motion with the district court. Rather than serving Levinson with their own motion, on August 19, 2002, the Newell defendants moved to join Baldwin's motion for sanctions against Levinson. On August 22, 2002, the district court granted Levinson's motion to withdraw as counsel due to a conflict of interest. During the same hearing, the district court cautioned Levinson that it was retaining jurisdiction over him for any future Rule 11 motions. Community Bank eventually served Levinson with its own motion for sanctions almost six months later, on February 3, 2003.

On March 17, 2003, plaintiffs, through new counsel, moved for voluntary dismissal of their complaint under Federal Rule of Civil Procedure 41(a)(2). The district court dismissed the plaintiffs' federal claims with prejudice and their state claims without prejudice, but retained jurisdiction over the parties to consider the imposition of sanctions. After this dismissal, Community Bank filed its motion for Rule 11 sanctions with the district court on May 27, 2003.

On the same date, the district court granted all three defendants' motions for sanctions against Levinson. Levinson responded by filing motions for sanctions against Community Bank and the Newell defendants. The district court denied Levinson's motions, and he timely appealed these denials as well as the sanctions awarded against him.

## STANDARD OF REVIEW

We review the district court's imposition of Rule 11 sanctions, as well as its refusal to do so, for an abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*, 339 F.3d 1146, 1150 (9th Cir. 2003). Abuse of discretion may be found if the district court based its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *See Retail Flooring Dealers*, 339 F.3d at 1150.

## DISCUSSION

### I.  *The District Court Did Not Err in Finding the Complaint Frivolous*

**[1]** An attorney is subject to Rule 11 sanctions, among other reasons, when he presents to the court "claims, defenses, and other legal contentions . . . [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]" Fed. R. Civ. P. 11(b)(2). When, as here, a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotations and citation omitted). As shorthand for this test, we use the word "frivolous" "to denote a filing that is *both* baseless *and* made without a reasonable and competent inquiry." *Moore v. Keegan Mgmt. Co (In re Keegan Mgmt. Co., Sec. Litig.*), 78 F.3d 431, 434 (9th Cir. 1996). The district court determined that the complaint filed by Levinson was frivolous and therefore a proper basis for the Rule 11 sanctions against him. We agree.

### A. Adequate Legal Basis

[2] The complaint filed by Levinson alleged a due process violation based on 42 U.S.C. § 1985(3), which prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws[.]" 42 U.S.C. § 1985(3). The original purpose of § 1985(3), which was passed as the Ku Klux Klan Act of 1871, was to enforce the rights of African Americans and their supporters. *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). We have extended § 1985(3) to protect non-racial groups only if "the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or . . . Congress has indicated through legislation that the class require[s] special protection." *Id.* (internal quotations and citation omitted). Plaintiffs did not allege in their complaint that they belong to a racial group or an otherwise protected class, nor did they allege that the defendants intentionally discriminated against them on such grounds. Later, however, the Holgates contended that they were members of the protected class of "consumers looking to build their dream home." Not surprisingly, plaintiffs cited no case law recognizing such a class as meriting heightened protection. Nor can we consider their argument one for a non-frivolous extension of existing case law, as the Supreme Court has held that "group actions generally resting on economic motivations should be deemed beyond the reach of § 1985(3)." *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 839 (1983).

[3] The complaint also failed to allege evidence of a conspiracy and an act in furtherance of that conspiracy, which are required elements of a § 1985(3) action. *Sever*, 978 F.2d at 1536. It alleged that Newell and others conspired to violate the Holgates' civil rights, but it did not allege that a specific act was committed in furtherance of this conspiracy. As the complaint failed on its face to allege a required element of a § 1985(3) claim, the district court did not abuse its discretion

by finding it lacked adequate legal support. Even under the liberal notice pleading rules set out by the Federal Rules of Civil Procedure, the Holgates were required to do more. Fed. R. Civ. P. 8(a)(2). While Rule 8(a)(2) does not require plaintiffs to lay out in detail the *facts* upon which their claims are based, it does require plaintiffs to provide "a short and plain statement of the claim" to give the defendants fair notice of what the claim is and the grounds upon which it is based. *See Swierkiewicz v. Sorema, N. A.*, 534 U.S. 506, 512 (2002); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). The Holgates' complaint failed even this minimal test.

**[4]** We have held that "the mere existence of one non-frivolous claim" in a complaint does not immunize it from Rule 11 sanctions. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990). Accordingly, because we conclude that the plaintiffs' § 1985 claim lacked legal merit, we need not assess the legal support for the Holgates' RICO or state law claims.

## B. Reasonable Inquiry

**[5]** The reasonable inquiry test is meant to assist courts in discovering whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded. *Christian*, 286 F.3d at 1127. The fact that the Holgates' second counsel recommended that they request voluntary dismissal of the complaint suggests that Levinson did not conduct a reasonable inquiry before filing the complaint. When the plaintiffs filed for voluntary dismissal, no discovery had been conducted. Their new attorney, therefore, did not have the benefit of any information that Levinson could not have acquired through a reasonable legal investigation. Even the most cursory legal inquiry would have revealed the required elements of the federal claims asserted, elements that the Holgates' complaint did not allege. *See Truesdell v. S. Cal. Permanente Med. Group*, 293

F.3d 1146, 1153 (9th Cir. 2002). Accordingly, the district court did not abuse its discretion in concluding that Levinson failed to conduct an adequate investigation before filing the complaint.

## II.  *Appropriateness of the Sanctions Awarded to Each Defendant*

The fact that Levinson was allowed to withdraw as counsel due to a conflict of interest does not protect him from sanctions based on a filing that he made before that withdrawal. *Bader v. Itel Corp. (In re Itel Sec. Litig.)*, 791 F.2d 672, 675 (9th Cir. 1986) (observing that case law provides "absolutely no hint . . . that a lawyer may escape sanctions for misconduct simply by withdrawing from a case before opposing counsel applies for sanctions"). The signing requirement in Rule 11 makes clear that any attorney who, at any time, certified to the court that a pleading complies with Rule 11 is subject to the rule, even if the attorney later withdraws from the case.[1] Moreover, when Levinson was permitted to withdraw, the district court warned him "that if the [Rule 11] motion is raised again, even though you may be permitted to withdraw, the Court will retain jurisdiction [over] you with respect to the resolution of that motion."

**[6]** The 1993 Amendments to Rule 11, however, place stringent notice and filing requirements on parties seeking sanctions. When Rule 11 sanctions are initiated by motion of

---

[1]Fed. R. Civ. P. 11(b) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

a party, that motion must be separate "from other motions or requests" and must "describe the specific conduct alleged to violate" Rule 11(b). Fed. R. Civ. P. 11(c)(1)(A). In addition, the Rule's safe harbor provision requires parties filing such motions to give the opposing party 21 days first to "withdraw or otherwise correct" the offending paper. *Id.* We enforce this safe harbor provision strictly. *See Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 788-89 (9th Cir. 2001) (citing *Barber v. Miller*, 146 F.3d 707, 710-11 (9th Cir. 1998)). We must reverse the award of sanctions when the challenging party failed to comply with the safe harbor provisions, even when the underlying filing is frivolous. *Barber*, 146 F.3d at 711.

### A.    *Baldwin*

Levinson concedes that Baldwin satisfied the safe harbor provisions of Rule 11. On March 18, 2002, Baldwin first served Levinson with a letter and a copy of the motion he intended to file if the plaintiffs did not remove Baldwin as a defendant or cure the deficiencies in the legal claims against him. Baldwin then waited over 21 days before filing this motion for sanctions with the district court. At the time of filing, Levinson was still acting as counsel for the Holgates and he had not withdrawn or otherwise amended the complaint in response to Baldwin's letter. On August 22, 2002, the district court denied Baldwin's initial motion for sanctions without prejudice and allowed Levinson to withdraw as counsel, but retained jurisdiction over Levinson for future Rule 11 motions. This was not the end of the matter. On March 25, 2003, Baldwin re-filed his Rule 11 motion and again served Levinson.

**[7]** We hold that Levinson received all the process due to him when Baldwin initially satisfied the safe harbor requirements of Rule 11. There was no need for Baldwin to satisfy a second safe harbor period when he re-filed his Rule 11 motion in 2003. *See* Fed. R. Civ. P. 11 advisory committee's notes to 1993 amends. ("These provisions are intended to pro-

vide a type of 'safe harbor' against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation."). During the entire safe harbor period in 2002, Levinson was still acting as the Holgates' counsel and therefore had ample ability and opportunity to avoid Rule 11 sanctions by withdrawing or otherwise correcting the offending paper.

B.  *The Newell Defendants*

Rather than serving Levinson with a separate notice of their intention to seek Rule 11 sanctions and then waiting 21 days before filing a motion with the district court, on August 19, 2002, the Newell defendants filed a motion to join in Baldwin's motion for sanctions. Because they served Levinson with their joinder motion the same day they filed it with the district court, the joinder motion was the first notice Levinson had of the Newell defendants' intention to seek sanctions against him. Three days after receiving this notice, Levinson withdrew as counsel for the Holgates. On April 4, 2003, the Newell defendants filed a second motion with the district court requesting Rule 11 sanctions against Levinson.

**[8]** The safe harbor period commenced when the Newell defendants simultaneously filed their joinder motion and served Levinson. *See* Fed. R. Civ. P. 11 advisory committee's notes to 1993 amends. ("[T]he 'safe harbor' period begins to run only upon service of the motion."). Although Levinson remained counsel for the Holgates for only three days after he was served with this motion, there is nothing in the record to indicate that he did anything to withdraw or otherwise correct the complaint in light of this motion. Because Levinson had prior notice of the frivolousness of the complaint (from the Baldwin motion), and notice of a second forthcoming motion

for sanctions, we conclude that the district court did not abuse its discretion by awarding sanctions to the Newell defendants.

## C. The Community Bank of Nevada

On January 27, 2003, Community Bank filed a motion for sanctions under Rule 11, but failed to serve a copy on Levinson until February 3, 2003. The district court denied this motion on March 4, 2003. Community Bank concedes that it failed to satisfy the safe harbor provision with respect to this motion. On May 15 and 16, 2003, Community Bank re-filed its Rule 11 motion with the court and served a copy on Levinson, respectively. Levinson argues that Community Bank failed to satisfy the safe harbor provision. We agree and reverse the district court's award of Rule 11 sanctions to Community Bank.

[9] Despite the fact that one of its co-defendants had served Levinson with a motion seeking Rule 11 sanctions on March 18, 2002, Community Bank waited over ten months before taking any action to seek sanctions against Levinson. When deciding a motion for sanctions under Rule 11, a district court should consider when the opposing counsel was served with the motion. "Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." Fed. R. Civ. P. 11 advisory committee's notes to 1993 amends. It is hard to view Community Bank's service of its May 2003 motion as timely when the underlying complaint was filed over a year earlier on February 7, 2002. In addition, by the time Community Bank served Levinson with its motion for sanctions, on February 3, 2003, over five months had passed since Levinson's withdrawal as the Holgates' attorney. At this point, Levinson essentially had no power to correct the offending paper or to counsel the Holgates to withdraw it.

[10] Community Bank argues that even if it did not independently satisfy safe harbor, it satisfied the requirement by

styling its motion for sanctions as a joinder to Baldwin's properly filed Rule 11 motion. We disagree. One purpose of the safe harbor requirement is to provide parties with proper notice of the allegations against them and an adequate opportunity to cure the alleged deficiencies. Fed. R. Civ. P. 11 advisory committee's notes to 1993 amends. ("Explicit provision is made for litigants to be provided notice of the alleged violation and an opportunity to respond before sanctions are imposed."). We are not convinced that a party receives sufficient notice of the allegations against him when only one of several co-defendants indicates its intention to seek sanctions. When Baldwin originally served Levinson with his Rule 11 motion, Levinson would have considered the fact that the other defendants had not filed motions in deciding on his response. By the time the Newell defendants filed their motion, however, Levinson would have realized that the situation had become more serious. Of course, at this time Levinson still served as counsel to the Holgates and could advise them concerning the motion. Had Levinson known that *all* of the defendants were seeking sanctions against him based on the filing of the Holgates' complaint, he may well have taken more serious steps to convince the Holgates to withdraw the complaint or otherwise find a way to correct the complaint within the meaning of Rule 11. We hold that the district court clearly erred in determining that Community Bank had complied with the safe harbor requirements despite the fact that it failed to provide Levinson with independent notice of its intent to seek sanctions and the required 21 days in which to cure the alleged problem.

On remand, the district court may wish to reapportion the amount of sanctions awarded to Baldwin and the Newell defendants. The defendants collectively sought over $100,000 in costs, which they documented for the district court, but the district court opted to impose only $12,000 in sanctions against Levinson based on its conclusion that this amount was sufficient to deter Levinson from filing frivolous complaints in the future. *See* Fed. R. Civ. P. 11(c)(2) (limiting Rule 11

sanctions "to what is sufficient to deter repetition of [the challenged] conduct or comparable conduct by others similarly situated"). The district court awarded $3,000 in sanctions to Baldwin, $5,000 to the Newell defendants, and $4,000 to Community Bank. On remand, the district court should consider whether the $8,000 in sanctions awarded to Baldwin and the Newell defendants, which we affirm, is sufficient to deter Levinson or others like him.

### III. *The District Court Did Not Err in Denying Sanctions Against All Defendants*

Levinson appeals the district court's refusal to impose sanctions under Rule 41(a) and Rule 11 against all defendants except Baldwin. Specifically, Levinson argues that each of the defendants should be sanctioned for failing to cite "adverse" authority in their sanctions motions. This argument must fail, as we have held that imposing Rule 11 sanctions for the failure to cite adverse authority would be unduly burdensome to even "a diligent lawyer." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1542 (9th Cir. 1986). Accordingly, the district court did not abuse its discretion by denying the award of sanctions to Levinson.

Additionally, Levinson argues that Community Bank should be sanctioned for: (1) failing to provide him with adequate safe harbor when it filed for Rule 11 sanctions; (2) citing unpublished Ninth Circuit dispositions in a reply brief; and (3) multiplying the litigation by opposing plaintiffs' motion for voluntary dismissal, in violation of 28 U.S.C. § 1927. The appropriate remedy for Community Bank's failure to satisfy safe harbor is a denial of its request for Rule 11 sanctions against Levinson. *See Radcliffe*, 254 F.3d at 788-89. With respect to Community Bank's citation to unpublished opinions, Community Bank remedied this problem through errata filed with the court on June 25, 2003, within the 21-day safe harbor period. The district court did not err when it determined that sanctions based on this error were not warranted.

*See* Fed. R. Civ. P. 11 advisory committee's notes to 1993 amends. (noting that "a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation"). Lastly, Levinson's claim that Community Bank multiplied the litigation and therefore should be sanctioned under 28 U.S.C. § 1927 lacks merit. "Invocation of a federal court's inherent power to sanction requires a finding of bad faith." *Miller v. Cardinale (In re Deville)*, 361 F.3d 539, 548 (9th Cir. 2004) (quoting *Fellheimer, Eichon & Braverman v. Charter Technologies*, 57 F.3d 1215, 1225 (3d Cir. 1995)). From the instant the complaint was filed naming it as a defendant, Community Bank attempted to have the case dismissed. Therefore, the district court did not err when it found that Levinson failed to show that Community Bank acted in bad faith to multiply this litigation.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision to award Rule 11 sanctions to Baldwin and the Newell defendants, but REVERSE the award of sanctions to Community Bank. We also AFFIRM the district court's decision to deny sanctions to Levinson.

**AFFIRMED in part and REVERSED in part, REMANDED for consideration of the amount of sanctions awarded on the motions of Baldwin and the Newell defendants.**