**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No. WW-14-1262-JuKiF |
| ) | |
| CINDY SHANNON ANDERSON, ) | Bk. No. 09-43049-PBS |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| MARK G. OLSON, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | M E M O R A N D U M* |
| ) | |
| CINDY SHANNON ANDERSON; DON ) | |
| THACKER, Chapter 7 Trustee, ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on September 25, 2015
at Seattle, Washington

Filed – October 7, 2015

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Paul B. Snyder, Bankruptcy Judge, Presiding

_____

Appearances:    Chris Graver of Keller Rohrback LLP argued for
appellant Mark G. Olson; Thomas W. Stilley of
Sussman Shank LLP argued for appellee Don
Thacker, Chapter 7 Trustee.

_____

Before:  JURY, KIRSCHER, and FARIS, Bankruptcy Judges.

_____

* This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

-1-

Appellee chapter 7[1] trustee, Don Thacker (Trustee), employed appellant attorney, Mark G. Olson (Olson), to pursue a personal injury claim (PI claim) held by debtor, Cindy S. Anderson (Debtor). More than three years later, Olson settled the PI claim for $41,000 without Trustee's knowledge or consent. Olson paid himself a portion of the settlement proceeds and disbursed the rest to Debtor. These actions were in direct contravention of the express terms of Olson's employment agreement with Trustee, which required Trustee's approval of any settlement, and the bankruptcy court's employment order, which required Olson to obtain court approval of his fees. Moreover, Olson disbursed property of the bankruptcy estate to Debtor who had not yet claimed an exemption in the PI Claim. Debtor spent most of the money by the time Trustee learned about the settlement.

Trustee asked Olson and Debtor to turn over the settlement proceeds. Trustee settled with Debtor, but Olson refused the request. Trustee filed a motion seeking turnover of the settlement proceeds, followed by a separate motion for sanctions against Olson under Rule 9011 and 28 U.S.C. § 1927. After a hearing, the bankruptcy court entered an order granting Trustee's motions for turnover and for sanctions, but deferred deciding the amount of the sanctions until Trustee's attorneys

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

-2-

filed their fee application.[2]  The order regarding the sanctions became final when the court subsequently entered an order fixing the amount of the sanctions as $13,696 in fees and $639.02 in costs, which amounts represented fees and costs incurred by Trustee's counsel (Sanctions Order).  Olson appeals from the Sanctions Order.  We AFFIRM.

## I.  FACTS[3]

The material facts are undisputed.  Debtor filed a chapter 7 bankruptcy petition on April 30, 2009.  Debtor neither disclosed nor exempted the PI Claim in her schedules.  On June 15, 2009, Debtor amended her Schedule B to include the PI Claim as an asset but she did not assert an exemption in it.

In June 2009, Debtor hired Olson to represent her in connection with the PI claim.  Since her injuries were sustained at a hotel and casino in Nevada, Olson associated with a Nevada attorney, Justin Wilson.

On June 29, 2009, Trustee and Olson entered into an Attorney-Client Fee Agreement (Fee Agreement), under which Olson agreed to pursue the PI claim on behalf of the bankruptcy

---

[2] The order also required Olson to turn over the amount he had paid himself from the settlement proceeds and denied his motion for attorneys' fees for representing the estate.  Pursuant to an Order Defining Scope of Appeal filed on July 7, 2014, a motions panel determined that the order was final as to the turnover and attorney fee denial which Olson did not timely appeal.  However, the Sanction Order was not final since the court had not yet determined the amount of sanctions.  Therefore, the scope of this appeal was limited to the sanction award as reflected in the orders of February 14 and May 6, 2014.

[3] We borrow heavily from the bankruptcy court's recitation of the facts in its February 14, 2014 ruling.

-3-

estate. Under the agreement, Olson was entitled to a forty percent contingency fee if the matter was settled prior to trial, forty-five percent if the case went to trial, and fifty percent if there was an appeal. The terms of the agreement required Trustee's approval prior to any settlement: "Neither [Olson] nor [Trustee] shall settle or compromise any aspect of a lawsuit without agreement between client and attorney."

On August 28, 2009, Trustee filed an application to employ Olson. Olson signed a Declaration of Disinterestedness, in which he declared under penalty of perjury that he had read and was familiar with Bankr. Local Rule 2016-1 regarding compensation of professionals. On the same day, the bankruptcy court entered an order approving Olson's employment. The employment order provided that any compensation to Olson was subject to court approval.

On November 2, 2009, Debtor received her § 727 discharge, but her case remained open.

On August 9, 2010, Olson, in connection with co-counsel Justin Wilson, filed a personal injury lawsuit on behalf of Debtor against the Nevada hotel and casino.

In December 2012, without Trustee's knowledge or consent, and without obtaining the bankruptcy court's approval, Debtor and Olson settled the lawsuit for $41,000. After receiving this amount, Olson paid himself a forty percent contingency fee of $16,400[4] and expenses of $3,376.22, and distributed the

---

[4] Olson asserts that he gave one-half of this amount, or $8,200, to Wilson.

remaining $21,223.78 to Debtor, again without communicating with Trustee or obtaining the bankruptcy court's approval.

In January 2013, Trustee sent an email to Olson inquiring about the status of the PI Claim. Olson informed Trustee that the claim had been settled and the proceeds used to pay his attorneys' fees with the remainder distributed to Debtor. According to Trustee, he advised Olson that he had no authority to settle the case or pay himself attorneys' fees, and that he should not have disbursed any proceeds to Debtor as she had claimed no exemption in the PI Claim. Trustee demanded that Olson and Debtor turn over the settlement proceeds, but both failed and refused to do so.

On March 14, 2013, Debtor filed an amended Schedule C, claiming for the first time that $20,200 of the settlement proceeds were exempt. Trustee objected to Debtor's claim of exemption.

On May 16, 2013, Trustee filed a motion for turnover, seeking to recover the $41,000 in settlement proceeds from Debtor and Olson. Debtor and Olson objected to the motion. On August 8, 2013, Olson filed a declaration that included the following:

> 7. . . . Given that Ms. Anderson's bankruptcy had been completely discharged and there were no outstanding bills or creditors, it is not clear what Mr. Thacker's intentions were regarding these funds. As the funds were entirely distributed in accordance with the fee agreements, there was nothing left from the modest settlement to pass on to Mr. Thacker in any event.
>
> 8. . . . However, given that Mr. Thacker had agreed to the contingency fee arrangement and that he had agreed to at least the $16,000 personal exemption amount to be awarded to Ms. Anderson in the personal injury

> matter, I do not believe that he had a legal right to the $50,000 he is claiming in this proceeding.
> Mr. Thacker's position is unreasonable and being taken in bad faith.

Trustee disputed those statements, contending that they were without evidentiary support and not warranted by existing law in violation of Rule 9011.

In September 2013, Trustee and Debtor settled Trustee's objection to her claim of exemption for $3,883.78. Trustee later testified at the evidentiary hearing on the turnover motion that his primary motivation for the settlement was that Debtor already had spent most of the settlement proceeds and remained insolvent. The bankruptcy court entered an order approving the settlement on December 26, 2013.

On October 9, 2013, in a final effort to resolve the matter and avoid further fees and costs, Trustee served Olson's attorneys with a letter dated October 9, 2013, and a Motion for Sanctions, giving Olson twenty-one days to withdraw his objection to the turnover motion and to agree to turn over the settlement proceeds or face a motion for sanctions for his continuing unjustifiable refusal to turn over the funds.[5] Trustee received no response to that letter. Before the turnover motion was heard, on November 5, 2014, Trustee filed a motion for sanctions (Sanctions Motion).

On December 17, 2013, Olson sought approval of his fees in the amount of $16,400 and costs of $3,376.22 by filing a fee

---

[5] There is no dispute that the service of the motion complied with the "safe-harbor" provisions under Rule 9011(c)(1)(A).

-6-

application.

On February 3, 2014, the bankruptcy court conducted an evidentiary hearing on the turnover motion, the Sanctions Motion, and Olson's fee application.

On February 14, 2014, the bankruptcy court issued an oral ruling. The bankruptcy court acknowledged that Trustee sought turnover of the settlement proceeds under § 542(a). However, as Olson had already paid himself his fees and costs from the settlement, the court found that Trustee's motion was in effect a motion to disgorge fees.[6] The bankruptcy court noted that it had broad and inherent authority to deny or order disgorgement of compensation when an attorney failed to meet the requirements of §§ 327, 329, 330, or 331 under In re Alvarado, 496 B.R. 200, 213 (N.D. Cal. 2013) (citing Am. Law Ctr. PC v. Stanley (In re Jastrem), 253 F.3d 438, 443 (9th Cir. 2001) (finding that bankruptcy court had the authority under § 329 to order an attorney to return fees that it determined were excess or unreasonable)); In re New River Dry Dock, Inc., 451 B.R. 586, 592 (Bankr. S.D. Fla. 2011) (noting that "[d]isgorgement is the expected remedy when a professional does not comply with the Bankruptcy Code or its Rules").

In deciding whether Olson was entitled to any fees, the bankruptcy court considered whether Olson's services had benefitted the estate under § 330(a)(3). The court ultimately

---

[6] Under Rule 7001(1) Trustee was required to bring a request for turnover in an adversary proceeding. By characterizing the motion as one for disgorgement, Trustee's request was properly before the court by motion.

concluded that his services resulted in a loss, rather than a benefit to the estate. In reaching this conclusion, the court found that by settling the PI Claim without authority, Olson denied Trustee and the court the opportunity to evaluate the proposed settlement. Thus, it remained unknown whether the $41,000 settlement was in the best interest of the estate. The court further found that Olson's disbursement of $21,223.78 in settlement proceeds to Debtor caused prejudice to the estate by at least that amount since by the time Trustee became aware of the settlement and distribution, Debtor had spent most of the money.

When considering the Sanctions Motion, the bankruptcy court concluded that ¶¶ 7 and 8 of Olson's declaration filed in opposition to Trustee's request for turnover ignored the uncontested facts in the case and were in direct conflict with bankruptcy law, including § 330 and Rule 9019. For these reasons, the bankruptcy court found that Olson's resistance to turning over estate property was without a factual or legal basis in violation of Rule 9011.

The court also agreed with Trustee that Olson violated 28 U.S.C. § 1927 by unreasonably multiplying the proceedings in this case when he failed to immediately turn over the settlement proceeds upon Trustee's demand. In the end, the bankruptcy court decided that the estate was entitled to recover the attorneys' fees and costs it incurred in pursuing turnover of the settlement proceeds from Olson, but it required Trustee's counsel to file a separate motion to quantify the reasonable fees.

On February 14, 2014, the bankruptcy court entered an order (1) requiring Olson to turn over (disgorge) $19,776.22 ($16,400 in fees and $3,376.22 in costs) that he paid himself from the settlement proceeds, (2) denying Olson's fee application in its entirety, and (3) awarding sanctions against Olson in an amount yet to be determined.

Olson did not appeal the turnover order until May 20, 2014. The Panel dismissed that appeal, which included the turnover order and the order denying Olson's fees, as untimely. That dismissal was not further appealed.

On April 8, 2014, Trustee's counsel filed their fee application seeking $18,696 in fees and $639.02 in costs to be paid directly by Olson. These fees and costs were incurred in connection with the turnover motion, the denial of Olson's attorneys' fees, and the Sanctions Motion. Counsel noted that if these amounts were paid by Olson, the distribution to creditors of approximately forty-eight percent would not be diminished. Attached to the declaration accompanying the motion were the relevant time records.

Olson responded to the motion, contending that he had already been penalized by the court when it denied his fee application in its entirety. Olson also maintained that counsel's fees were unreasonable and excessive for several reasons. First, the hourly rate of $430-$450 was unreasonable and higher than the usual and customary rate for this type of matter. Second, the number of hours billed was unreasonable especially as related to the 14.1 hours spent preparing for the evidentiary hearing. Olson contended this was far more than

necessary for a less than two hour hearing. Finally, Olson objected to the allocation of work among available personnel, as all but 1.9 hours of the 43.4 hours requested were billed by Mr. Stilley at the highest possible rate.

On May 6, 2014, the bankruptcy court held a hearing on Trustee's attorneys' fee application. The court found Olson's double penalty argument without merit.

> THE COURT: Let me ask you: Is this really a double penalty? As I understand it, the first issue is whether he should be entitled to any fees because there was no approval. Mr. Thacker did not have an opportunity to even review the settlement; and there was very little money, as a consequence, that came into the estate. That's one issue.
>
> Then the second issue is, given that, whether he should have been so resistant to the turnover that it caused the trustee to have to, not only file an action against him, but take it all the way to an evidentiary hearing in a case where the law -- when I looked at it, it seemed fairly clear to me what the end result would be.

In the end, the court concluded that the double penalty argument was, in essence, a motion for reconsideration of the court's earlier order which denied Mr. Olson his fees and concurrently granted sanctions against him. Since Olson did not seek reconsideration of or appeal that order, the court found that the order was final and not subject to collateral attack.

The court next considered the reasonableness of the fees requested. It found that the hourly rate of $430-$450 per hour was reasonable. Upon questioning Trustee's counsel, the court concluded that the amount of time preparing for the evidentiary hearing was unreasonable and thus reduced the fees requested by $5,000. The court also found unpersuasive Olson's argument that Trustee's attorney should have allocated some of the legal work

-10-

to associates with a lower billable hourly rate. Finally, the court dispensed with Olson's contention that Trustee's attorney should not be awarded fees for opposing his fee application because it was unlikely that Trustee would have objected to Olson's fees if Olson had turned over the settlement proceeds.

The bankruptcy court entered an order awarding Trustee's counsel $13,696 in fees and $639.02 in costs to be paid by Olson. Olson timely appealed the Sanctions Order on May 20, 2014.

## II.  JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (E). We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

Did the bankruptcy court abuse its discretion by imposing sanctions against Olson under 28 U.S.C. § 1927?

Did the bankruptcy court abuse its discretion by finding sanctions were warranted against Olson under Rule 9011 and in determining that $13,696 in fees and $639.02 in costs was an appropriate sanction?

## IV.  STANDARDS OF REVIEW

We review all aspects of a bankruptcy court's decision to impose Rule 9011 sanctions for abuse of discretion. Valley Nat'l Bank v. Needler (In re Grantham Bros.), 922 F.2d 1438, 1441 (9th Cir. 1991). We apply a two-part test to determine whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc). First, we consider de novo whether the bankruptcy court

-11-

applied the correct legal standard to the relief requested. Id. Then, we review the bankruptcy court's fact findings for clear error. Id. at 1262 & n. 20. We must affirm the bankruptcy court's fact findings unless we conclude that they are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" Id. at 1262.

The bankruptcy court has "broad fact-finding powers with respect to sanctions, and its findings warrant great deference. . . ." Primus Auto. Fin. Serv., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997) (quoting Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1366 (9th Cir. 1990)(en banc)).

We do not reverse for errors not affecting substantial rights of the parties and may affirm for any reason supported by the record. COM-1 Info, Inc. v. Wolkowitz (In re Maximus Computers, Inc.), 278 B.R. 189, 194 (9th Cir. BAP 2002).

## V. DISCUSSION

### A. 28 U.S.C. § 1927

28 U.S.C. § 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Therefore, to be sanctionable under 28 U.S.C. § 1927, counsel's conduct must multiply the proceedings in both an unreasonable and vexatious manner. B.K.B. v. Maui Police Dep't, 276 F.3d 1091,

-12-

1107 (9th Cir. 2002). A finding that the attorney recklessly[7] raised a frivolous argument which resulted in the multiplication of the proceedings is sufficient to impose sanctions under 28 U.S.C. § 1927. Id.

Olson complains on appeal that the bankruptcy court's findings fell short of these standards and thus imposition of the sanctions based on 28 U.S.C. § 1927 was in error. We need not address these arguments because the Ninth Circuit does not consider a bankruptcy court as a "court of the United States." Miller v. Cardinale (In re Deville), 361 F.3d 539, 546 (9th Cir. 2004). Therefore, a bankruptcy court has no power to impose sanctions under 28 U.S.C. § 1927. Because this was an alternative ground for imposing sanctions against Olson, the bankruptcy court's reliance on 28 U.S.C. § 1927 was harmless error. See Rule 9005 (incorporating Fed. R. Civ. Proc. 61 which provides in part: "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

**B.  The bankruptcy court did not abuse its discretion by imposing sanctions against Olson under Rule 9011.**

Rule 9011(b) "Representations to the court" states:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, --

---

[7] At one point in his opening brief Olson concedes that perhaps he acted recklessly.

-13-

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

The language of Rule 9011 parallels that of Civil Rule 11. Therefore, courts analyzing sanctions under Rule 9011 may appropriately rely on cases interpreting Civil Rule 11. See Marsch v. Marsch (In re Marsch), 36 F.3d 825, 829 (9th Cir. 1994).

An attorney has a duty to conduct a reasonable factual investigation as well as to perform adequate legal research that confirms that his position is warranted by existing law (or by a good faith argument for a modification or extension of existing law). Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002). The bankruptcy court must measure the attorney's conduct "objectively against a reasonableness standard, which consists of a competent attorney admitted to practice before the involved court." In re Grantham Bros., 922 F.2d at 1441.

In its oral decision, the bankruptcy court set forth detailed findings of fact explaining why Olson's opposition to

-14-

Trustee's turnover motion violated Rule 9011.  Olson does not point to any specific error in the court's factual findings, instead making various arguments as to why sanctions were not warranted based on his interpretation of the facts and his subjective belief that he did not act unreasonably.

Olson contends that while his conduct might have been deficient, it was based on a misunderstanding of the law which was not unreasonable since he is not a bankruptcy specialist. He further maintains that he had no prior offenses, demonstrated proficiency in representing the client, and fully disclosed information about the settlement to Trustee.  Olson also asserts that there was no evidence that a better result was obtainable or that Debtor could have received a significantly larger jury verdict.  At bottom, this appears to be a "no harm, no foul" argument.

Next, although the bankruptcy court did not expressly address the ABA Standards, Olson argues that none of those standards are met here:[8]  (1) whether the duty violated was to a client, the public, the legal system, or the profession; (2) whether the attorney acted intentionally, knowingly or negligently; (3) the seriousness of the actual or potential injury caused by the attorney's misconduct; and (4) the existence of aggravating and mitigating factors.  In re Nguyen, 447 B.R. at 277.  According to Olson, he violated no duty to his

_____

[8] Olson acknowledges that it was not mandatory for the bankruptcy court to make specific findings regarding the applicability of the ABA standards under In re Nguyen, 447 B.R. 268, 277 (9th Cir. BAP 2011)(en banc).

-15-

client, he misunderstood the effect of Debtor's discharge, the injury was only monetary injury to the estate, and there were mitigating factors such as added monetary value to the estate which the bankruptcy court failed to consider.

Olson never argued any of these issues in the bankruptcy court nor did he mention the ABA standards. Generally, we do not consider issues raised for the first time on appeal. O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957 (9th Cir. 1989). Further, we review claims of judicial error and do not address fact-bound issues such as analyzing whether Olson's conduct violated ABA factors that the bankruptcy court never examined. In addition, Olson's mistaken belief about the effect of Debtor's discharge does not warrant reversal of the bankruptcy court's decision to award sanctions. Rather, the facts in this case support the bankruptcy court's exercise of discretion to impose sanctions for Olson's violation of Rule 9011.

The record shows that Olson's conduct met the standards for imposition of sanctions under Rule 9011(b)(2) and (3). Olson's refusal to turn over property of the estate was squarely foreclosed by the case law and the Bankruptcy Code and Rules cited by the bankruptcy court. Further, as the bankruptcy court properly found, the facts set forth in Olson's declaration at ¶¶ 7 and 8 were without evidentiary support given that he had been employed by the bankruptcy estate and "was aware of the rules regarding compensation of professionals employed in a bankruptcy case." In addition, although not mentioned by the bankruptcy court, by its express terms, § 542(a) is

-16-

self-executing and does not require that the trustee take any action or commence a proceeding or obtain a court order to compel the turnover. See Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 432 B.R. 812, 823 (9th Cir. BAP 2010). Simply put, Olson's position was entirely without legal foundation and the facts alleged in his declaration had no evidentiary support. Accordingly, we hold the bankruptcy court did not abuse its discretion in imposing sanctions.

**C. The bankruptcy court did not abuse its discretion in determining that an award of attorneys' fees and costs was an appropriate sanction.**

Olson also argues that the bankruptcy court abused its discretion in awarding sanctions in the amount of $13,696 in fees and $639.02 in costs by failing to (1) consider whether the sanction imposed was proportional to the violation committed, (2) make findings why imposing fees of over $15,000 was necessary as an effective deterrent, and (3) consider alternatives to a monetary sanction. Olson further asserts that the imposition of sanctions together with the denial of his fees amounts to an impermissible double penalty. This last argument is the only one he made before the bankruptcy court.[9]

Once the bankruptcy court decides sanctions are warranted, the court has wide discretion to determine the appropriate sanction under Rule 9011. Hudson v. Moore Bus. Forms, Inc., 836 F.2d 1156, 1163 (9th Cir. 1987). Rule 9011(c)(2) provides

---

[9] Olson did not raise the proportionality or penalty issues before the bankruptcy court. Therefore, we need not consider these issues raised for the first time on appeal. In re E.R. Fegert, Inc., 887 F.2d at 957.

-17-

that in determining the appropriate sanction, a court may, "if imposed on motion and warranted for effective deterrence, [issue] an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Under Civil Rule 11, "[r]ecovery should never exceed those expenses and fees that were reasonably necessary to resist the offending action." Fleisher v. Weinberg (In re Yagman), 796 F.2d 1165, 1185 (9th Cir. 1986). "The measure of sanctions under this language is not the actual fees and expenses incurred, but those that the court determines to be reasonable." Id. The bankruptcy court here chose to measure the sum necessary to deter future unwarranted resistance to a legally-mandated turnover of estate property as the reasonable fees expended in compelling the turnover and objecting to the unearned fees.

Under these standards, the record supports the bankruptcy court's imposition of sanctions in the amount of $13,696 in fees and $639.02 in costs. The bankruptcy court properly conducted an inquiry into the reasonableness of the fees and costs before awarding sanctions. The court scrutinized the itemized time records, questioned Trustee's counsel about various expenses and hours charged, and ultimately reduced the amount requested based on its reasonableness determination. Since the sanctions awarded by the bankruptcy court were properly calculated to reimburse Trustee's counsel for unnecessary litigation expenses, the amount of the sanctions awarded did not constitute an abuse of discretion.

Olson insists that the bankruptcy court erred by awarding

Trustees' attorneys' fees and costs as sanctions without considering that it had denied his fees, claiming that he was penalized twice for the same conduct. According to Olson, the double penalty adds up to $34,111.24: denial of $16,400 in fees and $3,376.22 in costs and sanctions for $13,696 in fees and $639.02 in costs. The $34,111.24 amount, Olson contends, is disproportionate to the size of the bankruptcy case and his conduct. Olson also argues that the sanctions on top of the denial of his fees transforms the sanctions into punitive damages or a "penalty" which is not authorized under the holdings in Price v. Lehtinen (In re Lehiten), 564 F.3d 1052, 1059 (9th Cir. 2009) (holding that the bankruptcy court's inherent sanction authority does not authorize significant punitive damages), and In re DeVille, 280 B.R. 483, 494 (9th Cir. BAP 2002) (finding that Rule 9011(c)(2) limits any monetary sanction that is imposed pursuant to a sua sponte order to a penalty payable to the court).

The bankruptcy court properly rejected Olson's double penalty theory. While the bankruptcy court's decision to deny his fees and impose sanctions involved some of the same conduct, the denial of Olson's fees was based on his breach of the Fee Agreement and employment order and violation of § 330 and Rule 9019, whereas the sanctions were imposed for his violation of Rule 9011. In applying § 330 standards to Olson's request for fees, the bankruptcy court did not need to consider whether the denial of his fees was a sufficient deterrent for purposes of Rule 9011. The denial of fees was not a deterrent, but rather was compelled by application of the § 330 standards to

-19-

the Fee Agreement and Olson's performance under that Agreement.

In contrast, the award of Rule 9011 sanctions was based solely on the pleadings signed and filed by Olson in opposition to Trustee's motion for turnover. Olson's position in opposition to turnover, which was not supported by law or fact, left Trustee with no alternative but to incur the added expense of pursuing recovery. Therefore, after finding Olson violated Rule 9011, the bankruptcy court had to determine what sanction would accomplish the purpose of deterrence. See Rule 9011(c) (sanction imposed by a court should "be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated"). The imposition of sanctions in the form of attorneys' fees and costs is specifically authorized under Rule 9011(c) for violations of Rule 9011(b). By awarding Trustee's counsel their reasonable fees, the bankruptcy court implicitly determined that a lesser sanction would not effectively deter Olson or others in his position. We will not disturb this discretionary determination on appeal.

## VI.   CONCLUSION

Having found no error, we AFFIRM.